498 A.2d 1339

**Mary BORRELL, Appellee,**

v.

**William B. BORRELL, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1985.

Filed Sept. 13, 1985.

2

Bohdan J. Zelechiwsky, Bethlehem, for appellant.

Cregg E. Mayrosh, Hellertown, for appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

CAVANAUGH, Judge:

William B. Borrell appeals to this court from the order of Northampton County Court of Common Pleas directing him to pay support to his wife, appellee, Mary Borrell, in the amount of $157.00 per week. Appellant contends that this order contravenes the terms of a separation agreement previously entered into by the parties and, accordingly, should be vacated. Alternatively, appellant argues that the trial court erred in refusing to award a new hearing on the grounds of after-discovered evidence put forth by Mr. Borrell.

At the time of the hearing in October, 1983, the parties were husband and wife.[1] They had ceased living together in the same household and, on August 20, 1981, had entered into a Separation Agreement. Pursuant to that agreement, the appellant agreed as follows:

13. HUSBAND agrees to pay alimony to WIFE in the amount of One Hundred Twenty-Five ($125.00) Dollars every two (2) weeks, until August 1, 1982.

---

1. As of January 5, 1984, the date on which all records from the lower court were forwarded to this court, no decree in divorce had been entered.

> Should HUSBAND fail to make payment under this Agreement, the entire balance shall be due and payable. Alimony payments will not be extended or increased beyond August 1, 1982.

Appellant met these obligations and continued to make payments voluntarily until May, 1983.

On July 13, 1983, appellee filed a petition for spousal support in the court below. Following a hearing, the court entered the order *sub judice* awarding appellee-wife $157.00 per week. In its opinion in support of that order, the court opined that it had not considered the Separation Agreement in making its decision because the Agreement by its terms did not provide for enforcement through an action for support. Lower ct. op. at 2 (citing Pa.R.C.P. 1910.1(b)(1)(c) ("The rules of this chapter [relating to actions for support] shall not govern a contract or agreement unless the contract or agreement provides that it may be enforced by an action in accordance with these rules.") Additionally the support court noted that the husband had presented no evidence that the Separation Agreement had been incorporated into a decree for divorce.[2] "Absent such an incorporation, or a provision for enforcement under an action for support, the separation agreement cannot be considered in these proceedings." Lower ct. op. at 2 (citing *Guerin v. Guerin*, 296 Pa.Super. 400, 442 A.2d 1112 (1982)). Alternatively, the court noted in a footnote, even if the agreement were considered it would be disregarded on the grounds that the wife was not counselled with respect to the agreement nor did she enter into it voluntarily. Lower ct. op. at 2 n. 2 (citing *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983)).

▪ The initial question before this court is whether the support hearing court ought properly to have considered the Separation Agreement. We believe that it should have. It is firmly settled that

> [u]ntil and unless the terms of a private agreement have been embodied in a court order, however entered, wheth-

---

**2.** See note 1 *supra.*

er by consent or not, the holding of *Commonwealth ex rel. Jones v. Jones,* 216 Pa.Superior Ct. 1, 260 A.2d 809 (1969), is clear: a private support agreement that has not been entered as a court order may not be enforced as a support order but may only be the subject of a law suit, like any other private agreement.

*Guerin v. Guerin,* 296 Pa.Super. at 403–04, 442 A.2d at 1113 (quoting *Commonwealth ex rel. Durso v. Durso,* 292 Pa.Super. 94, 99–100, 436 A.2d 1021, 1024 (1981) (Spaeth, J., concurring)). An apparent exception to this general rule is created by the Rules of Civil Procedure which provide that the procedures for court-ordered support matters may apply to private agreements if the agreement itself specifies that it may be enforced according to those rules. *See* Pa.R.C.P. 1910.1(b)(1)(c). *See also Guerin,* 296 Pa.Super. at 404 n. 3, 442 A.2d at 1114 n. 3.

In *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291 (1983), the father-husband appealed from an order denying his petition to reduce a child support order. The support order had been entered after the father had agreed, as part of a separation agreement, to pay child support of $120.00 per week. The agreement was subsequently entered as the court's order. In ruling on the petition to reduce, the lower court held that the father was bound by the separation agreement. *Id.,* 311 Pa.Superior Ct. at 497, 457 A.2d at 1292 (citing *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981)). On appeal, the father argued that the lower court lacked subject matter jurisdiction to consider the separation agreement.

Following a review of the pertinent case law, this court ruled that the support court properly considered the parties' separation agreement. In support of that conclusion the court reasoned:

> We are especially persuaded to this conclusion by *Brown v. Hall, supra,* where, as we have discussed, the Supreme Court consolidated a support action with an action upon a private agreement, and, having held the agreement enforceable, vacated the order entered in the support action. The course that litigation follows will

depend upon choices made by the parties. It may happen that the party who has been promised support in a separation agreement may bring an action for specific enforcement of the agreement. *Brown v. Hall, supra; Guerin v. Guerin, supra; Commonwealth ex rel. Roviello v. Roviello, supra.* But it may also happen that the party obligated to pay the support will take the initiative by filing a petition to reduce and remit arrearages. Nothing should turn on which party acts first. The party obligated by the separation agreement to pay support should not be permitted to avoid the principle established in *Brown v. Hall, supra*—in other words, should not be permitted to escape his support obligation as provided in the separation agreement—by beating the other party "to the punch," and filing a petition to reduce and remit before the party owed support files an action for specific performance.

*Millstein,* 311 Pa.Super. at 505–06, 457 A.2d at 1296 (citing *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Guerin v. Guerin,* 296 Pa.Super. 400, 442 A.2d 1112 (1982); *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974)).[3]

 We are likewise persuaded to a similar conclusion in the present matter, namely, that the support hearing court ought to have considered the parties' Separation Agreement before awarding support to Mrs. Borrell. Notwithstanding the interpretation given to Pa.R.C.P. 1910.-1(b)(1)(c) by the lower court, it makes more sense in terms of judicial economy to resolve the support question in light of all relevant information including private agreements reached by the litigants. We therefore construe Pa.R.C.P.

---

3. As the *Millstein* court further reasoned,
 It would make no sense to hold that Judge MIMS, sitting in the support court, ... should order a reduction in appellant's support obligation because of appellant's changed circumstances, despite the fact that appellee could then bring an action, either in assumpsit or for specific performance, on the separation agreement and have the reduction order vacated. Nothing in *Guerin* suggests that litigants and the lower courts are obliged to proceed in so circuitous, and therefore so slow and expensive, a manner.
 *Millstein,* 311 Pa.Super. at 504, 457 A.2d at 1295.

1910.1(b)(1)(c) to apply only to those cases in which one party brings an action to enforce a private agreement in the first instance. It does not control where, as here, the party responding to the support action offers in his defense a contract or agreement entered into by the parties.

Alternatively, the lower court stated, "[e]ven assuming, *arquendo*, that we were to consider the separation agreement, this would not affect the outcome of our decision. ... In the present case, the transcript is replete with credible testimony of a psychologist, a minister, and the plaintiff [wife] herself, that her signing the separation agreement was neither voluntary nor counseled." Lower ct. op. at 2 n. 2. This conclusion was based on language from *Millstein* and *Brown* where the court suggested that a separation agreement could be disregarded if that agreement was the product of an uncounseled, one-sided bargain.[4] *See Brown*, 495 Pa. at 643, 435 A.2d at 863; *Millstein*, 311 Pa.Super. at 507, 457 A.2d at 1297.

The rule of *Brown* and *Millstein* was precipitated by *Bria v. Bria*, 95 Dauph. 358 (1973), *aff'd. per curiam*, 464 Pa. 247, 346 A.2d 542 (1975). In *Bria*,

> the chancellor refused to grant specific enforcement of a provision in a separation agreement obligating the father to pay $43.00 per week for support of his adopted daughter because support in the amount of $31.00 per week, ordered by the support court, was adequate and appropriate.

4. It is noteworthy that the courts in both *Brown* and *Millstein* were presented with the question of what effect a separation agreement between the husband and wife would have on the parties' child support obligations. As such, an additional factor was involved which is not involved in the present appeal. As the court in *Brown* noted,
 [T]he courts of this Commonwealth correctly have not hesitated to disregard a support agreement *if it does not provide adequate support* for minor children:
 [A] mother cannot, by contract, bargain away the right of her minor child to adequate support, to the relief of the father, irrespective of the legality of the agreement between the parents themselves. *Commonwealth ex rel. Rossi v. Rossi*, 161 Pa.Super. 86, 89, 53 A.2d 887, 888 (1947), quoted in *Commonwealth ex rel. Snively v. Snively*, 206 Pa.Super. 278, 281, 212 A.2d 905, 906 (1965).
 *Brown*, 495 Pa. at 643 n. 11, 435 A.2d at 863 n. 11.

*Brown v. Hall,* 495 Pa. at 642–43, 435 A.2d at 862–63. The court in *Brown,* holding that the support hearing court *should* consider the separation agreement, sought to reconcile *Bria* where the agreement was disregarded. The court noted that in *Bria,* "the uncounseled husband thought he was required to sign the onerous agreement prepared by his wife's attorney in order to obtain a divorce. In this case [*Brown*] there is a nineteen paragraph separation agreement covering all aspects of the economic relationships of the parties, not a one-sided bargain, and both parties were represented by counsel throughout the entire negotiations." *Brown,* 495 Pa. at 643, 435 A.2d at 863. The court then reached the following conclusion:

> In the absence of an uncounseled, one-sided bargain as in *Bria,* and where no one argues that $90 per week is *inadequate* to support the children, we must enforce the parties' intention as mutually expressed in the separation agreement. As the chancellor here wrote:
>
>> A holding to the contrary would serve to illegitimize future separation agreements and encourage a party to promise anything to obtain a divorce, knowing he will never be bound by it, even when the promise is in writing and for valid consideration. Needless to say, such a holding would also serve to shake the very foundations of contract law and the sanctity of a bargain made between two parties dealing at arm's length.

*Brown,* 495 Pa. at 643–44, 435 A.2d at 863 (footnote omitted) (quoting *Brown v. Hall,* 27 Cum.L.J. 340, 349–50 (1977)).[5]

██ The Separation Agreement signed by the Borrells contains the following clause:

> 19. The provisions of this Agreement have been fully explained to the parties by their respective counsel and each party acknowledges that the Agreement is fair and equitable.

[5]. Appellee also asserts that the lower court did not err in entering the instant support order because neither party requested that the court consider the Separation Agreement in reaching its decision. We find

The lower court concluded that, contrary to the plain language of this paragraph, Mrs. Borrell was not counselled.[6,7]

Initially we must note that appellee testified at the support hearing that she went to her own attorney's office to sign the agreement and we observe further that she does not dispute her husband's allegation that Mrs. Borrell's own attorney drafted that agreement, as evidenced by the fact that the agreement appears on her attorney's stationery. Moreover, the lower court erred by looking outside the terms of the written agreement. It is familiar contract law that

> "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." Hence, where language is clear and unambiguous, the focus of interprettion is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

*Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982) (quoting *East Crossroads Center, Inc. v. Mellon-*

this claim to be without merit. A review of the transcript from the lower court hearing evinces that the focal point was the applicability and validity of the parties' separation agreement. In fact, on cross-examination by the appellee's counsel, Mr. Borrell confirmed that he was contesting his wife's right to support on the basis of the parties' agreement. Moreover, appellant has sufficiently preserved this issue in his Petition for Reconsideration: "10. Said Order is in violation of Paragraph Thirteen (13) of the Separation Agreement" and again in his Statement of Matters Complained of as Provided by Pa.R.A.P. 1925(b).

6. The hearing court made no finding as to whether the Separation Agreement was one-sided, however, on review we conclude that it was not. As in *Brown* and *Millstein,* the separation agreement here is a detailed agreement "covering all aspects of the economic relationships of the parties." *Millstein* 311 Pa.Super. at 507, 457 A.2d at 1297 (quoting *Brown v. Hall,* 495 Pa. at 643, 435 A.2d at 863). The agreement itself states that "each party acknowledges that the Agreement is fair and equitable."

7. On appeal, appellee does not assert that she was uncounseled or that she entered into the separation agreement involuntarily. Rather, she relies on the arguments previously resolved in this opinion.

*Stuart Co.,* 416 Pa. 229, 230–31, 205 A.2d 865, 866 (1965)). *See also In re Estate of Breyer,* 475 Pa. 108, 379 A.2d 1305 (1977); *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981). It is equally well settled that

> [t]he essence of contract law is the objective intent of the parties and where there has been no allegation of mistake, fraud, overreaching or the like, it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter. *Harris v. Dawson,* 479 Pa. 463, 468, 388 A.2d 748, 750 (1978). When an agreement is read aloud to both parties before its execution and a party testifies that he simply neglected to read the contract before signing, such testimony indicates carelessness and unilateral mistake, not fraud, and the parties will be legally bound by the written agreement. *Kay v. Kay,* 460 Pa. 680, 334 A.2d 585 (1975). "It falls stale upon the ear to be told that a formal contract was not read, or was hurriedly prepared, or was signed in haste. Such things are no ground for reforming or invalidating a contract." *Thrasher v. Rothrock,* 377 Pa. 562, 105 A.2d 600, 604 (1954) [ (Opinion of the Trial Court) ].

*Brokers Title Co. v. St. Paul F. & M. Ins. Co.,* 610 F.2d 1174, 1181 (3d Cir.1979). *See also Estate of Brant,* 463 Pa. 230, 344 A.2d 806 (1975) ("This court has repeatedly held that in the absence of proof of fraud 'failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.' ") Finally, "[a] party who seeks to strike down his solemn written obligation must present evidence which is clear, precise, and indubitable...." *Schoble v. Schoble,* 349 Pa. 408, 411, 37 A.2d 604, 605 (1944) (citations omitted).

In the present case, Mrs. Borrell testified at the hearing that she signed the agreement at her husband's request, but that she did so at her own attorney's office with only a secretary and her son present. There is no contention nor evidence that she was fraudulently misled into signing the contract or that anyone exerted undue

influence upon her.[8] To that extent then, Mrs. Borrell, and the lower court, are bound by that provision of the Separation Agreement which clearly states that she was counselled. Additionally, the evidence does not support the lower court's alternative finding that Mrs. Borrell entered the agreement involuntarily. Accordingly, we find that the support hearing court improperly refused to consider the Separation Agreement, and we remand the case for proceedings in accordance with this opinion.[9]

Order vacated and case remanded for further proceedings.

**8.** This court has previously written:

No assertion of fraud or mistake attendant upon the execution of the separation agreement is made. So long as a separation agreement stands unimpeached, the court cannot alter or change a provision for separate maintenance and support of the wife without the consent of both parties ... [A]bsent such impeachment, there is no authority for the court to cancel a contract made by the parties and in its place substitute one which it thinks proper but which as a matter of fact the parties had never assented to.

Litwack v. Litwack, 289 Pa.Super. 405, 409, 433 A.2d 514, 516 (1981) (quoting Leffler v. Leffler, 50 A.D.2d 93, 95, 376 N.Y.S.2d 176, 178 (1975)).

**9.** The second issue raised by the appellant is whether the lower court erred in refusing to grant a new hearing based on after-discovered evidence. In light of our disposition of the first issue, we need not address the merits of appellant's second argument.