532 A.2d 1212

**Frederick F. REILLY, Appellant,**

**v.**

**STROEHMANN BROTHERS COMPANY.**

Superior Court of Pennsylvania.

Argued April 29, 1987.

Filed Oct. 21, 1987.

Stephen D. Wicks, Altoona, for appellant.

David P. Andrews, Hollidaysburg, for appellee.

Before CIRILLO, President Judge, and MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

On September 9, 1965, appellant, Frederick F. Reilly, was hired by appellee, Stroehmann Brothers Company, after entering into a written employment contract for a position as a wholesale route salesman. Appellant was dismissed from appellee on November 12, 1983 for alleged wrongful misconduct. Relying on an employment handbook, published by appellee on April 26, 1982, appellant requested binding arbitration to review the matter of his discharge. This request was denied by appellee and appellant brought the instant action seeking specific performance of the binding arbitration provisions. The lower court sustained appellee's preliminary objection in the nature of a demurrer and appellant timely appeals that Order.

Our scope of review to a challenge to the sustaining of a preliminary objection in the nature of a demurrer is limited. *Mahoney v. Furches*, 503 Pa. 60, 468 A.2d 458 (1983); *Swidzinski v. Schultz*, 342 Pa.Super. 422, 493 A.2d 93 (1985). As an appellate court reviewing the approval of a demurrer, we must accept as true all well-pleaded material facts in the complaint as well as all inferences reasonably deducible therefrom. *Mahoney, supra; Toolan v. Trevose Federal Savings and Loan Association*, 501 Pa. 477, 462 A.2d 224 (1983); *Leach v. Hough*, 352 Pa.Super. 213, 507

A.2d 848 (1986). This Court is concerned only with determining the legal sufficiency of appellant's complaint; we must decide whether sufficient facts have been plead which would permit recovery if ultimately proven. *Gordon v. Lancaster Osteopathic Hospital Association,* 340 Pa.Super. 253, 489 A.2d 1364 (1985).

Appellant argues that the provisions of the employment handbook, specifically the arbitration section, were incorporated into the September 9, 1965 written contract of employment between the parties by operation of paragraph 7 of the contract, which reads as follows:

NOW THIS AGREEMENT WITNESSETH, that said employee agrees:

. . . .

7. That said employee will faithfully observe all rules and regulations of said Company now in effect, or such as May hereafter be adopted by Company, and that the posting of such rules and regulations at the plant of the Company shall be notice to said employee of the same, and he shall be bound by the same terms and conditions as though embodied herein.

Appellant claims that the handbook falls within the definition of "rules and regulations" which paragraph 7 contemplates. Therefore, appellant argues that the handbook, including the arbitration procedure therein, became part of the employment contract and is subject to specific enforcement.

Alternatively, appellant argues that even if the handbook was not incorporated into the employment contract, the arbitration provisions should be enforceable as a unilateral promise by appellee. Appellant maintains that the arbitration provisions requirement for "final" and "binding" arbitration must be read as implicitly imposing a "just cause" requirement upon appellee when discharging employees. By this, appellant avers that implied in the arbitration provision of the handbook is the employer's declaration that

its employees could only be discharged for just cause as determined by the arbitrator.

■ The well-settled rule in Pennsylvania is that: "[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary v. United States Steel Corporation*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Betts v. Stroehmann Brothers*, 355 Pa.Super. 195, 512 A.2d 1280 (1986); *Banas v. Mathews International Corporation*, 348 Pa.Super. 464, 502 A.2d 637 (1985). The at-will presumption, uniquely present in employment contracts, is that an employment agreement is presumptively terminable at will by either party; meaning, an employee may leave a job for any or no reason and an employer may discharge an employee for any or no cause. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986).

■ We find the terms of the instant employment contract made appellant an at-will employee. In paragraph 3 of his complaint, appellant admits his contract did not provide for a definite term of employment. Paragraph 4 of the complaint admits that appellant was terminated based upon an allegation of willful misconduct. The employment contract specifically states in paragraph 11(2) that appellee has the right to summarily terminate the employment relationship for misconduct:

> 2. Said Company agrees to give said employee 7 days notice, in writing, of its intention to sever his employment, except that said Company reserves to itself the right to summarily terminate said employment at any time, without notice, for any breach of trust or such serious misconduct on the part of said employee as would be detrimental to the interests of said Company.

By the terms of the agreement, appellee could terminate appellant for any or no cause, the only restriction placed upon appellee is that it must give appellant seven days notice of a termination if the cause of the termination, if

any, is anything other than misconduct on appellant's part. Since appellant has not averred a statutory remedy nor a violation of public policy, *Darlington, supra,* his recovery must depend on a contractual remedy.

We reject appellant's claim that the arbitration provisions in the employment handbook were incorporated into the employment contract by virtue of the contract's paragraph 7, above, which provides that the employee agrees to be bound by all "rules and regulations" of the company posted at the plant as though they were embodied in the employment contract. Upon a thorough review of the handbook we find that it was not a "rule" nor "regulation" as contemplated by paragraph 7. Rules and regulations relate to the day to day operation of the business and the employee's responsibility thereto. They do not alter the contract of employment except that he is on notice as to what his employer expects of him. The handbook merely outlined the existence of diverse topics of benefits and policies appellee provides its employees, such as various types of insurance and retirement benefits, the credit union, personnel policies in general, a method of determining full or part-time job status, how work shifts and time off are handled, employee meetings, and a complaint procedure for non-union employees, as well as neutral third party arbitration for discharged non-union employees. Appellant failed to aver that the handbook was posted in appellee's plants in conformance with the procedure stipulated by paragraph 7 of the contract as the proper means of notice of all rules and regulations. Nothing in the handbook can be construed to be a part of the employment contract or a "rule and regulation." A handbook, to be construed as a contract, must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment.

An examination of the handbook's benefits and policies, including that provision on arbitration which reads in part:

Stroehmann's management feels strongly about maintaining fairness in its hiring and disciplinary practices. That

is why we have designed a free and completely neutral third party arbitration procedure for all non-union employees. Under this program, if you are discharged for any reason, you may have an Arbitrator appointed by the AMERICAN ARBITRATION ASSOCIATION to hear and decide whether you have been discharged properly. The decision of the Arbitrator appointed to hear the case will be **FINAL** and **BINDING** on both sides. . . .

If the Arbitrator decides that you have not been properly discharged, he may reinstate you in your previous job, with back pay.

. . . .

This program is presented as a means of insuring fair, consistent and completely impartial handling of such matters. (Emphasis in original),

demonstrates they were never intended to be "rules" or "regulations" that the employees were to follow, but instead, they were meant to provide a general outline of benefits and procedures available to the employees. In the employment context a "rule" or "regulation" carry with them a connotation of requirement and are normally considered to be principles designed to govern the behavior of employees while at work. For example, a rule against alcoholic beverages or a rule requiring pay stubs for reimbursement of traveling expenses. A description of an arbitration program for discharged non-union employees must not be construed as a rule or regulation anymore than the life insurance benefits or other benefits described in the handbook. The arbitration provision does not require that employees submit discharges to binding arbitration, instead, non-union employees "may" submit to arbitration if they so choose. Consequently, we cannot find that the employment contract incorporated the contents of the handbook.

■ We find equally meritless appellant's alternative argument that the handbook's arbitration provisions constitute an implicit unilateral promise by appellee to only termi-

nate employees for "just cause."[1] Appellant relies upon our en banc decision in *Banas, supra,* where we held, inter alia, that an employee was properly discharged as an at-will employee where no statutory exception to the at-will rule existed, no definite term of employment was established and no "just cause" provision was present in the employee handbook issued by the employer. In passing, we stated in *Banas:*

> *If* the handbook had contained, if not expressly at least by clear implication, a just cause provision, *then* appellee's claim might have merit.... Since here the handbook did not contain, expressly or by clear implication, any just cause provision, appellee has shown nothing to take his case out of the settled employee-at-will rule. (Emphasis in original).

*Banas, supra* 348 Pa.Super. at 484–85, 502 A.2d at 647–648. Although these statements do indicate that under the right circumstances a just cause provision may be found in a handbook by implication, in *Banas,* we expressly refused to answer the question of whether a handbook should be accorded contractual significance.

In *Richardson v. Charles Cole Memorial Hospital,* 320 Pa.Super. 106, 108, 466 A.2d 1084, 1085 (1983), we held that an employer's "unilateral act of publishing its policies" in an employee handbook "did not amount to the 'meeting of the minds' required for a contract" when "[t]he terms of the handbook were not bargained for by the parties and any benefits conferred by it were mere gratuitous." *See Muscarella v. Milton Shoe Manufacturing Company, Inc.,* 352 Pa.Super. 158, 162, 507 A.2d 430, 432 (1986) ("[I]t is well established that failure to adhere to a company personnel policy does not create a cause of action for breach of an employment contract"); *Darlington, supra* (quoting *Rich-*

---

1. We note that appellant did not plead the existence of a unilateral contract, in the form of the handbook, in his complaint. Instead, in paragraph 7 of the complaint, appellant averred that appellee amended the employment contract with the handbook. It is only in response to appellee's preliminary objections that appellant has raised an argument that a unilateral contract existed in the handbook.

*ardson* with approval). In *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 212, 511 A.2d 830, 836–38 (1986), we affirmed our holding in *Richardson* when concluding that a handbook should not be accorded contractual significance, stating that:

> We believe that the holding in *Richardson, supra,* is more in keeping with the philosophy of the at-will presumption than is the line of cases finding contractual significance in handbooks. And, we might add, it is more in keeping with our analysis in *Darlington, supra,* wherein we cautioned against further burdening of the judicial process with expanding the bases for recovery in this field. *Richardson* held that handbooks are not contracts because they lack consideration. We need not analyze whether there is consideration here because we find that a reasonable employee in appellant's position would not have understood that in distributing the handbook, the employer intended to be legally bound.

> We also believe that cases which find contractual significance in handbooks have bypassed an important inquiry. Before we can decide whether there is a valid offer and acceptance with the distribution of a handbook, a threshold question must be asked: With the distribution of the handbook, does the at-will employee reasonably understand that the employer intended to alter the pre-existing at-will status?

> In analyzing an employer's publication and distribution of an employee handbook, we should not necessarily presume that the employer intended to alter the previous existing contractual relationship between the parties; nor should we assume that the employee believed that the handbook was a legally binding instrument....

> ....

> ... [I]n deciding whether the employer newspaper intended to recontract with all employees who received the handbook, we must ask whether the employment handbook evidences an intent that it became a legally binding

contract that replaces the pre-existing at-will status. This is a question of interpretation and is therefore left to the court.

We find that a reasonable employee in appellant's position would not understand that in distributing the handbook appellee intended to be legally bound by its terms. As in *Martin*, it can be said that this handbook "covers" the employment relationship because of the wide range of topics it discusses. We said in *Martin:* "It is perfectly reasonable to say that this document 'covers' the employment relationship. It is, however a quantum leap in logic to assert that because the handbook in some way 'covers' the employment relationship, the terms of the handbook limit discharges for objective just cause only." *Martin, supra,* 354 Pa.Superior Ct. at 215, 511 A.2d at 838. Appellant had a written contract of employment with appellee which firmly established an at-will relationship between the parties. Reading the handbook as a whole, we do not believe a reasonable person in the appellant's position would have interpreted the benefits and policies it contains as converting appellant from an at-will employee to an employee with an indefinite contract who could never be dismissed without objective cause. Additionally, appellant has not alleged any specific consideration in addition to his services which could change his status from an employment at-will relationship.

Accordingly, we affirm the lower court's granting of a demurrer to the plaintiff's complaint.

Order affirmed.

CIRILLO, President Judge, concurs with opinion.

MONTEMURO, J., dissents with opinion.

CIRILLO, President Judge, concurring:

I join the majority's opinion but write separately to emphasize the following matters. The appellant was covered by a written contract in this case. In interpreting a contract, a court is bound by that contract, and absent fraud, mistake or ambiguity, cannot look outside its terms, or

redraft it under the guise of interpretation. *Borrell v. Borrell,* 346 Pa.Super. 1, 10, 498 A.2d 1339, 1344 (1985); *Trumpp v. Trumpp,* 351 Pa.Super. 205, 209, 505 A.2d 601, 603 (1985). The plain terms of the contract in question lack a provision specifying the amount of time appellant was to work for Stroehmann's. In an employment situation, as the majority correctly points out, there is a presumption that if the parties fail to set out the duration of the employment relationship, that relationship is terminable at any time by either party. *Greene v. Oliver Realty Inc.,* 363 Pa.Super. 534, 541, 526 A.2d 1192, 1196 (1987). As there has been no showing of fraud, ambiguity or mistake, we must consider only the language of the contract, and cannot resort to the employee handbook for guidance in interpreting it. According to those provisions, Reilly was an at-will employee of Stroehmann's, subject to discharge at any time.

Further, Reilly has been unable to overcome the presumption of at-will employment raised by his contract. The presumption may be overcome if the party seeking to destroy it can present clear evidence that both employer and employee intended to allow the employee greater rights than the at-will relationship provides. *Greene,* 363 Pa.Super. at 543, 526 A.2d at 1202. The presence of consideration is only a single factor in the court's determination of intent. The dissent finds consideration in the fact that Reilly continued to work during the period following the publication of the handbook. I see no need to discuss that issue. Considering the facts and the inferences to be drawn therefrom [1], no meeting of the minds occurred between Stroehmann's and Reilly that would allow Reilly to overcome the at-will presumption raised by his contract.

In his dissent, Judge Montemuro contends that the arbitration provisions outlined by the handbook provide that

---

**1.** As the majority points out, in reviewing the grant of a preliminary objection in the nature of a demurrer, the appellate court must accept as true all well-pleaded facts of the complaint as well as the reasonable inferences which may be drawn from them. *Mahoney v. Furches,* 503 Pa. 60, 66, 468 A.2d 458, 461–2 (1983).

meeting of the minds. He argues that a reasonable employee would have understood the arbitration provisions to create a subjective "just cause" standard for discharge. I disagree. In the instant case, it is reasonable to infer that the employer did not intend to create an employment relationship that could not be altered absent a finding of "just cause" by a neutral arbitrator. The arbitration provision was offered only to non-union employees. Clearly the inference may be drawn that the provision was intended by the employer to keep them non-union, not to provide them with a settled term of employment. No meeting of the minds can be said to have occurred here, and thus the at-will presumption is not overcome.

Although we may deplore the use of such methods by Stroehmann's, and although Stroehmann's may indeed be reaping the benefits of the bargain without fulfilling its obligations, the proper forum to rectify these injustices is the National Labor Relations Board, not the courts of this Commonwealth.

I therefore concur in the opinion of the majority.

MONTEMURO, Judge, dissenting:

I believe that a reasonable employee in Mr. Reilly's position would have construed Stroehmann's promise to arbitrate employee dismissals as a promise to alter the existing at-will employment relationship. I further believe that Stroehmann received valuable consideration for this promise. For these reasons, I dissent.

The handbook language at issue here differs from the more vague policy pronouncements at issue in past cases. For example, the handbook before us in *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986), contained nothing more than an illustrative list of typical employee misconduct that would warrant dismissal. We concluded that the handbook was "an aspirational statement by the employer listing actions that generally will not

be tolerated." *Martin, supra*, 354 Pa.Superior Ct. at 214, 511 A.2d at 838. We added that the book served only "an informational function." *Id.* Likewise, the handbook at issue in *Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 108, 466 A.2d 1084, 1085 (1983), contained the bare promise that the employer would "provide continual employment to all employees whose work proves satisfactory." This promise, as we later observed in *Banas v. Matthews Int'l Corp.*, 348 Pa.Super. 464, 469 n. 1, 502 A.2d 637, 648 n. 1 (1985) (en banc), was "hardly a promise at all" because it reserved to the employer the discretion "to determine what measure of performance was satisfactory." On the other hand, the neutral arbitration provision in the Stroehmann handbook is more than merely a statement of general employment policy or an aspirational pledge to abide by a subjective standard of "fairness" or "just cause."

Stroehmann could not have relinquished more thoroughly its right to dismiss its employees at-will. The company promised to subject all non-union employee dismissals to the objective and independent scrutiny of a third party. It further promised to abide by that third party's determination of whether the dismissal in question was "fair." Under the terms of the neutral arbitration provision, the arbitrator has "final and binding" authority to order the reinstatement of an improperly discharged employee. Stroehmann neither retained control over the ultimate decision nor reserved to itself the power to veto the arbitrator's order. It expressly abandoned its right to discharge its employees "for any or no reason." In place of that right, it established a specific "program" that would ensure "a fair, consistent and completely impartial handling of such matters."

The neutral arbitration provision, moreover, is not a mere gratuity. Stroehmann expressly limited availability of the procedure to *non-union* employees. Thus, in exchange for the neutral third-party arbitration of discharge disputes,

Stroehmann expected its employees to continue their employment without the benefits of union representation or membership. A reasonable employee would understand the terms of the bargain: Stroehmann promised to forego one of its rights as a means of inducing its employees to forego one of theirs. We can reasonably infer[1] from the allegations in the complaint that Mr. Reilly continued to work for Stroehmann as a non-union employee during the period between publication of the handbook and termination of the employment relationship.[2] We should not allow Stroehmann to reap the benefits of the bargain without also requiring it to fulfill the obligations of the bargain.

As our President Judge recently observed in *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987), the at-will employment doctrine is nothing more than a presumption. It enables the fact-finder to assume the existence of an at-will employment relationship only in the absence of evidence to the contrary. It does not allow us to ignore the parties' intent, which remains the lodestar of all contract analysis and construction. If a court fails to enforce that intent, "it violates the cannons of contract law as well as the very policies upon which the doctrine of at-will employment is based." *Greene v. Oliver Realty, Inc., supra,* 363 Pa.Superior Ct. at 555, 526 A.2d at 1202. I would therefore reverse the order of the Blair County Court of Common Pleas in this case.

1. As the majority correctly observes, Mr. Reilly is entitled to the benefit of all favorable inferences that we can reasonably deduce from the complaint.

2. Of course, Mr. Reilly appears to have worked as a non-union employee since he began with Stroehmann in 1965. We can only speculate about the reasons why Stroehmann decided in 1982 to offer neutral arbitration of employee dismissals. Perhaps the company sought to discourage an attempt to unionize its employees. A performance is adequate consideration for a promise "if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." Restatement (Second) of Contracts § 71 (1981). Courts ordinarily do not pursue the highly speculative inquiry into the adequacy of consideration. *See id.* at § 79 comment c.