651 A.2d 157

**Patricia Jane JONES, Appellee,**

v.

**Gary Hugh JONES, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1994.

Filed Dec. 8, 1994.

28

John M. Demcisak, Willow Grove, for appellant.

Donald A. Semisch, Willow Grove, for appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge.

On November 4, 1981, appellant Gary Hugh Jones ("husband") and appellee Patricia Jane Jones ("wife") entered into a separation agreement ("agreement"). This agreement settled the parties' marital rights, as well as custody and support issues surrounding the two children of the marriage. An order, based upon the terms of the agreement, was approved

and entered by the Honorable Anita B. Brody on November 17, 1981. On July 12, 1982, a divorce decree was entered.

Pursuant to the agreement, husband commenced making the $1,300 per month payments for the support of the two children. He also kept up the required medical and life insurance and paid for college costs. In 1985, wife filed a petition to increase the amount of support. The proceeding ended with the parties entering into a stipulation leaving the payments at $1,300 per month.

Subsequently, husband remarried and had three children with his second wife. The second of the three children was born with Down's Syndrome. On May 3, 1993, husband filed a petition to modify/vacate order of support and complaint in declaratory judgment. He essentially claimed that his changed circumstances, especially the birth of a new child with Down's Syndrome, required the court to lower his support obligation. The trial court held a hearing, denied husband's petition, and entered an order explaining the reasons for denial. This appeal followed.

The trial court correctly found that the agreement was a separate contract and, as such, the court did not have the ability to modify it. If a support agreement survives as an enforceable contract, it is governed by the law of contracts. *Flick v. Flick,* 408 Pa.Super. 110, 113–15, 596 A.2d 216, 218 (1991); *D'Huy v. D'Huy,* 390 Pa.Super. 509, 518, 568 A.2d 1289, 1293 (1990) (en banc). If a support agreement merges into a divorce decree, however, the agreement "take[s] on all of the attributes of support Orders for purposes of modification and enforcement." *Sonder v. Sonder,* 378 Pa.Super. 474, 512, 549 A.2d 155, 175 (1988) (en banc). The key to analyzing questions of merger and modifiability is to ascertain whether or not a merger was intended by the parties. *Ashbaugh v. Ashbaugh,* 426 Pa.Super. 589, 596–97, 627 A.2d 1210, 1214 (1993); *McGough v. McGough,* 361 Pa.Super. 391, 394, 522 A.2d 638, 640 (1987), *allocatur denied,* 515 Pa. 623, 531 A.2d 431 (1987). The starting point for determining the intent of the parties is the language and terms of the agreement itself.

*Ashbaugh,* 426 Pa.Super. at 596–97, 627 A.2d at 1214. If the language is clear and unambiguous, "this court need only examine the writing itself to give effect to the parties' understanding." *Id.; McMahon v. McMahon,* 417 Pa.Super. 592, 599–600, 612 A.2d 1360, 1364 (1992) (en banc).

■ The language of the agreement, in the present case, is clear as to the parties' intent: they intended that the agreement remain a separate and distinct contract. Clause 1 of the agreement states, "[t]his Agreement shall continue in effect and shall survive the granting of any divorce in favor of Wife or Husband ... and the provisions of the Agreement shall be binding whether or not under a part of the court record in divorce." Clause 16 similarly states, "[t]his Agreement shall remain in full force and effect regardless of the change in the marital status of the parties." Additionally, clause 13 reads, "[t]his Agreement shall not be modified or waived by the parties hereto except by written instrument, executed in the same manner as this agreement." This language clearly indicates an intent that the agreement survive rather than merge with the divorce decree. Since the language of the agreement is clear and the divorce decree does not expressly merge the agreement, we find that the agreement survives as an enforceable contract, and is not subject to modification by the court.

■ Notwithstanding the above analysis, husband argues that a court may refuse to enforce a separation agreement where there has been a change in circumstances due to factors beyond a spouse's control. In *Brown v. Hall,* our Supreme Court rejected this assertion in all but two limited situations. 495 Pa. 635, 642–44, 435 A.2d 859, 863 (1981). The Court wrote, "In the absence of an uncounseled, one-sided bargain as in *Bria* [v. Bria, 95 Dauph. 358 (1973) ], and where no one argues that $90 per week is inadequate to support the children, we must enforce the parties' intentions as mutually expressed in the separation agreement." *Id.* (footnotes omitted). Therefore, a court does not have the power to modify or ignore a separation agreement unless: (1) the agreement was

uncounseled and one-sided, or (2) the agreement does not provide adequate support for the children. *Id.*

The second exception is totally inapplicable in this case. It is true that a court has an inherent power to act in the best interests of the children. Therefore, a court can increase support payments above the level set out in a separation agreement. *Commonwealth ex rel. Rossi v. Rossi,* 161 Pa.Super. 86, 89, 53 A.2d 887, 888 (1947); *Commonwealth ex rel. Snively v. Snively,* 206 Pa.Super. 278, 281, 212 A.2d 905, 906 (1965). *See also Knorr v. Knorr,* 527 Pa. 83, 86–88, 588 A.2d 503, 505 (1991) (court can disregard an agreement and raise support level if it is in the best interests of the children because parents "have no power ... to bargain away the rights of their children."). The reasoning, however, does not extend to instances where the court seeks to lower a support payment below the level set out in the separation agreement. *Brown,* 495 Pa. at 642–44, 435 A.2d at 863; *Millstein v. Millstein,* 311 Pa.Super. 495, 498–500, 457 A.2d 1291, 1293 (1983). Therefore, the amount of support in the separation agreement is a floor, not a ceiling. *Id.* Since husband seeks to reduce his support payments below the level set forth in the agreement, this line of cases is simply inapplicable.

We also find no merit in husband's claim that the agreement was uncounseled and one-sided. This Court has held that mere allegations that an agreement was one-sided and uncounseled will not suffice in the face of a clear and unambiguous agreement stating otherwise. *Borrell v. Borrell,* 346 Pa.Super. 1, 9–11, 498 A.2d 1339, 1344 (1985). In *Borrell,* the trial court looked outside of the terms of the agreement and credited evidence suggesting that the agreement was uncounseled. We held that it was improper to look outside the clear terms of the agreement. *Id.* We wrote, "[t]here is no contention nor evidence that she was fraudulently misled into signing the contract or that anyone exerted undue influence upon her. To that extent then, Mrs. Borrell, and the lower court, are bound by that provision of the Separation Agreement which clearly states that she was counselled." *Id.* (footnotes omitted).

Similarly, the agreement in the present case clearly states that both parties received the benefit of counsel and that the deal was fair and equitable. The trial court found no evidence of fraud or overreaching. Opinion, 4/20/94 at 9. In light of the clear language of the agreement and the lack of any evidence of fraud or overreaching, we find that husband is bound by the express terms of the agreement he signed. Accordingly, we find that the agreement was not uncounseled or one-sided. Given that husband has failed to establish either exception specified in *Brown*, the agreement is valid and enforceable.

 Husband also asserts that wife has waived her right to rely on the agreement because she filed for an increase of support in 1985. In *Knorr*, our Supreme Court held that once a spouse chooses not to sue on the separation agreement, but chooses instead to seek redress in the family courts, she forfeits her contractual right to sue and the court is no longer bound by the private agreement. 527 Pa. at 86–88, 588 A.2d at 505. The basis of the decision was that once the court took control of the case, issued an order, and placed its enforcement power behind that order, the court had the power to modify the order as circumstances might require. *Id.* The present case is distinguishable because the court never took control of the case, issued an order, or put its enforcement power behind the order. Wife did file a petition to increase the support, but she did not succeed and the court never issued an order. The episode ended in a stipulation that mirrored the agreement. The mere act of filing for an increase is not what was at issue in *Knorr*; rather, the issuance of a court order to be enforced by the court was the issue in *Knorr*. Therefore, *Knorr* is inapplicable in the present case and wife has not waived her right to rely on the agreement.

Husband's final claim is that the agreement is unclear and requires court clarification. In this matter, we agree with the trial court that there is no lack of clarity in the terms of the

agreement such as to require clarification or interpretation by the court. Opinion, 4/20/94 at 11.

Order affirmed.