J-S52040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| KATHLEEN K. ORRIS, NOW BUCKSBEE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PAUL E. ORRIS | |
| Appellant | No. 340 WDA 2015 |

Appeal from the Order of January 26, 2015
In the Court of Common Pleas of Erie County
Civil Division at No.: 14281-2009

BEFORE:  SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 30, 2015**

Paul E. Orris ("Husband") appeals the January 26, 2015 order that denied his motion for special relief and request for a preliminary injunction. In that motion, Husband sought to revise the settlement agreement that he entered into with Kathleen K. Orris n/k/a Bucksbee ("Wife"), which was incorporated into their divorce decree.  After review, we affirm.

The trial court has summarized the factual and procedural history of this case as follows:

> [The parties married on March 25, 1995, and separated on June 2, 2009.  Wife] filed a Complaint for Divorce, which included one count of divorce pursuant to [23 Pa.C.S.A.] § 3301(c) or (d) . . . and one count of equitable distribution, by and through her counsel, Joseph P. Conti, Esq., on September 22, 2009.  A copy of [Wife's] Complaint for Divorce was personally served on [Husband] via hand delivery on September 25, 2009, and an Affidavit of Service was filed on September 29, 2009.

[Wife] filed a Motion for Special Relief on October 14, 2009. By Order of Court dated October 14, 2009, Judge William R. Cunningham granted [Wife's] Motion for Special Relief and prohibited [Husband] from removing, transferring, selling, pledging, encumbering, withdrawing, dissipating or otherwise using assets, monies and benefits [Husband] may have.

[Wife] filed a Motion for Special Relief on May 26, 2011. By Order of Court dated May 26, 2011, [the] trial court granted [Wife's] Motion for Special Relief and restrained [Husband] from severing the timber from the land of the marital residence and selling the timber on the open market and authorized Scott W. Seibert, Certified Forester ACF, to enter upon the land of the marital residence for the purpose of conducting a timber appraisal on behalf of [Wife].

[Wife] filed a Motion for Appointment of a Master on May 22, 2014. By Order of Court dated May 23, 2014, Ralph R. Riehl III, Esq., was appointed as Divorce Master. [Wife] filed her Income and Expenses Statement and Inventory on June 20, 2014. [Husband] filed his Income and Expense Statement and Inventory and Appraisement on June 30, 2014. A settlement conference took place on July 22, 2014, at which the parties entered into a mutually agreed-upon Marital Settlement Agreement. [Relevant to this appeal, pursuant to their agreement, Wife was to receive the proceeds of the sale of the timber on approximately 210 acres surrounding the marital residence. Husband received the marital residence.] The Final Divorce Decree, including the incorporated[, but not merged,] Marital Settlement Agreement, was entered by Judge Elizabeth K. Kelly on August 6, 2014.

On November 25, 2014, [Husband,] by and through his counsel, Daniel P. Marnen, Esq., filed a Motion for Special Relief Pursuant to [Pa.R.C.P.] 1920.43 and Request for Preliminary Injunction. [Specifically, Husband complained that the 2011 appraisal for the timber that was used for the Marital Settlement Agreement significantly undervalued the timber. Wife] filed her Answer/New Matter to [Husband's motion] on December 1, 2014. [Husband] filed a Reply to [Wife's] New Matter on December 12, 2014. A hearing on [Husband's motion] was held on January 5, 2015, at which [Wife's] counsel, Andrea G.L. Amicangelo, Esq., raised the issue of whether [the] trial court ha[d] jurisdiction to hear and exercise authority on [Husband's motion]. By Order of Court dated January 5, 2015, the parties'

respective counsel filed Memoranda of Law regarding whether [the] trial court ha[d] jurisdiction to hear and exercise authority on [Husband's motion]. After reviewing the parties' Memoranda of Law and relevant statutory and case law, [the] trial court entered its Memorandum Opinion and Order dismissing [Husband's motion] as [the] trial court concluded it did not have jurisdiction to open, modify, or vacate the parties' Final Divorce Decree and Marital Settlement Agreement.

[Husband] filed his Notice of Appeal to the Pennsylvania Superior Court on February 25, 2015, appealing [the] trial court's Memorandum Opinion and Order dated January 26, 2015. [The] trial court filed its [] Order [for a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)] on February 26, 2015. [Husband] filed his Statement of Matters Complained of on Appeal on March 15, 2015.

Trial Court Opinion ("T.C.O."), 4/27/2015, at 2-3 (minor modifications for clarity). The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on April 27, 2015.[1]

Husband raises one issue for our review:

Whether the lower court erred as a matter of law in dismissing [Husband's] Motion [for] Special Relief and Request for Preliminary Injunction for lack of jurisdiction pursuant to 42 Pa.C.S.A. § 5505 when the record as presented to the trial court contained possible new evidence or proof of extraordinary circumstances due to mistake of fact presented during the divorce settlement negotiations?

Husband's Brief at 2.

Before reaching the merits of Husband's appeal, we must determine whether the underlying agreement should be treated as a contract or a court

---

[1] Wife filed two motions to quash this appeal. Both were denied without prejudice to raise the issue before this merits panel. Wife has not done so.

order. The trial court analyzed this case as if the agreement merged with the divorce decree and Husband sought to re-open the decree. However, the decree states that, "[t]he provisions of the Marital Property Settlement Agreement entered into between the parties on July 22, 2014 are incorporated herein by reference for the purpose of enforcement, but not merged into the decree. . . ." Decree of Divorce, 8/6/2014.

> [I]n our law, marital settlement agreements that are merged into a divorce decree are treated differently than agreements that are incorporated into the divorce decree. **See Jones v. Jones**, 651 A.2d 157, 158 (Pa. Super. 1994) (holding that an agreement that merges into the divorce decree is enforceable as a court order, but an agreement incorporated into the decree "survives as an enforceable contract [and] is governed by the law of contracts").

**Morgan v. Morgan**, 99 A.3d 554, 557 (Pa. Super. 2014) (citation modified).

> [When a] property settlement agreement did not merge into the divorce decree, it stands as a separate contract, is subject to the law governing contracts and is to be reviewed as any other contract. **Simeone v. Simeone**, 581 A.2d 162, 165-66 (Pa. 1990). It is well-established that the law of contracts governs marital settlement agreements, and under the law of contracts, the court must ascertain the intent of the parties when interpreting a contractual agreement. **Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted). The standard of enforceability of a contractual agreement is also clear: "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." **McMahon v. McMahon**, 612 A.2d 1360, 1363 (Pa. Super. 1992) (citations omitted). As such, a trial court may interpret a property settlement agreement as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake. **Bianchi v. Bianchi**, 859 A.2d 511, 515 (Pa. Super. 2004). Moreover, the long-standing law of this

- 4 -

Commonwealth is that property settlement agreements are presumed to be valid and binding upon the parties. ***McGannon v. McGannon***, 359 A.2d 431 (Pa. Super. 1976).

***Crispo v. Crispo***, 909 A.2d 308, 312-13 (Pa. Super. 2006) (citations modified); ***see also Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007); ***Stamerro v. Stamerro***, 889 A.2d 1251, 1258 (Pa. Super. 2005). Here, the settlement agreement was not merged into the divorce decree, but instead was incorporated. Therefore, we treat the agreement as an enforceable contract.

> In conducting our review of the court's holding as to the marriage settlement agreement, we remain cognizant of the following:
>
> > Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.
>
> ***Stamerro***, 889 A.2d at 1257-1258 (citations and quotations omitted).
>
> > When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.
>
> ***Id.*** at 1257 (citations and quotations omitted).

***Kraisinger***, 928 A.2d at 339 (citation modified).

> In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of

existing property rights and interests between the parties, alimony, alimony *pendente lite*, counsel fees or expenses shall not be subject to modification by the court.

23 Pa.C.S.A. § 3105(c). Instantly, the parties' settlement agreement does not contain a provision permitting modification of the terms by the court.

However, Husband argues that there was a mistake of fact, which would permit revision, because he relied upon the timber appraisal in the negotiations.[2] Husband asserts that he believed the appraisal to be accurate at the time that it was conducted. Husband now argues that Wife will receive a windfall because the appraisal was undervalued.[3] Husband's Brief at 8-9.

We have defined mistake of fact as follows:

The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party. A mutual

_____

[2] Husband also asserts that there was a unilateral mistake of fact. Husband's Brief at 8. However, "[i]f a mistake is not mutual but unilateral and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief in rescinding the contract[.]" ***Vonada v. Long***, 852 A.2d 331, 338 (Pa. Super. 2004). Husband has not demonstrated that his reliance upon the appraisal was "due to the fault of Wife" as he has not offered any argument that Wife knew the appraisal was not accurate. Therefore, a claim of unilateral mistake affords Husband no relief.

[3] Although Husband also argued that the agreement was fraudulent at the motion hearing, ***see*** Notes of Testimony, 1/5/2015, at 7, Husband has abandoned any such argument before this Court.

mistake occurs when the written instrument fails to . . . set forth the "true" agreement of the parties. [T]he language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

The Restatement (Second) of Contracts § 152 provides:

§ 152. When Mistake Of Both Parties Makes A Contract Voidable

**(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.**

**(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.**

Restatement (Second) of Contracts § 152 (1981). Under this section,

[T]he contract is voidable by the adversely affected party if three conditions are met. First, the mistake must relate to a "basic assumption on which the contract was made." Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the **mistake must not be one as to which the party seeking relief bears the risk.** The parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken. However, since mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake. The rule stated in this Section is subject to that in § 157 on fault of the party seeking relief. It is also subject to the rules on exercise of the power of avoidance stated in §§ 378–85.

*Id.* Comment: *a. Rationale* (emphasis added).

- 7 -

A contract entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake if (1) the misconception entered into the contemplation of both parties as a condition of assent, and (2) the parties can be placed in their former position regarding the subject matter of the contract. In other words, mutual mistake occurs when a fact in existence at the time of the **formation** of the contract, but unknown to both parties, will materially affect the parties' performance of the contract.

Section 154 of the Restatement (Second) of Contracts provides:

§ 154. When A Party Bears The Risk Of A Mistake

**A party bears the risk of a mistake when**

**(a) the risk is allocated to him by agreement of the parties, or**

**(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or**

**(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.**

Restatement (Second) of Contracts § 154 (1981). "The rule stated in this Section determines whether a party bears the risk of a mistake for purposes of [Sections] 152 and 153." **Id.** Comment: *a. Rationale.* "Even though a mistaken party does not bear the risk of a mistake, he may be barred from avoidance if the mistake was the result of his failure to act in good faith and in accordance with reasonable standards of fair dealing." **Id.**

***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 410-11 (Pa. Super. 2010)

(some citations omitted; emphasis in original).

Here, Husband's argument fails because he bore the risk of a mistake. Husband received a copy of the appraisal which noted that it was "a walk through appraisal. No trees were measured." Wife's Answer and New

Matter, 12/1/2014, at Exh. 1 (Appraisal, 6/20/2011). Husband was on notice as of receipt of the appraisal that it was an estimate based upon a walk-through of the property. Therefore, Husband knew that he and Wife had only limited knowledge of the value of the timber based upon the conditional appraisal.

Despite that limited knowledge, Husband did not seek to obtain a more complete appraisal in the three years between the appraisal and the settlement agreement. Husband resided upon the property during that period of time and had complete control of the land. He could have sought a new appraisal at any time. Further, Husband never questioned the appraiser about the value or his methodology in reaching that value. Notes of Testimony ("N.T."), 1/5/2015, at 8, 12.[4]

When the settlement was entered into the record, the parties acknowledged that the timber had been valued at $130,000, but the agreement stated that Wife would receive the value of the timber when sold, not that Wife would receive $130,000. N.T., 7/22/2014, 10-11. Husband could have asked to limit Wife's receipt to the appraised value or that Wife could only sell $130,000 worth of timber. Husband chose not to limit his

_____

[4]   Interestingly, although Husband accepted the appraisal in 2014, at argument, his attorney stated, "There was no need at the time to do a counter appraisal. There was no dispute. In fact, [Husband] thought that appraisal was higher than it should have been." N.T., 1/5/2015, at 12. So despite concerns that the appraisal might not be accurate in 2014, Husband chose to do nothing and simply accepted the value.

exposure to fluctuations in price and, instead, relied solely upon the appraisal. Because he treated his limited knowledge as sufficient for the settlement negotiations, Husband bore the risk of the mistake in value.

Even assuming that this issue was "a basic assumption upon which the contract was made" and had "a material effect on the agreed exchange," *see Step Plan Servs., Inc.*, *supra*, Husband bore the risk of mistake when he accepted the appraisal value despite its caveats and failed to seek his own appraisal or question the appraiser about the value. Therefore, no relief is available.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015