March, Appellant, *v.* Banus.

Argued April 23, 1959.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Fred T. Cadmus, III,* for appellant.

*William E. Parke,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1959:
Carrie L. March, the plaintiff in this case, was the owner in fee simple of property in North Coventry Township, Chester County, which was sold at a tax sale to the defendants John T. and Dorothy R. Banus for a sum considerably less than its market value. Miss March did not learn of the sale until hours after it had taken place, on July 9, 1956.  She promptly advised the treasurer and the director of the Tax Claim Bureau of Chester County that she had not received notice of the intended sale and offered to redeem the property, reimbursing to the defendants the sum of $1600, the amount they had paid.  The named officials refused to accept her offer and she accordingly instituted an action in equity to set aside the transfer of title.

In her complaint, Miss March specified that on June 7, 1956, the Tax Claim Bureau mailed in her

name, to an address which she had abandoned, a written notice of the proposed sale scheduled for July 9, 1956. The letter was returned to the sender unclaimed. A month later, on July 6, 1956, a written notice of the tax sale was posted on the premises stating that they would be sold on July 9, 1956. Miss March did not see this notice. Then, on the afternoon or evening of July 9th, she learned for the first time that a tax sale had been contemplated and, by now, was accomplished. In her complaint Miss March averred that her property was valued $10,000 and prayed the court to order the defendants to deliver up for cancellation the deed of the property, upon payment to them by the plaintiff of the sum of $1600.

The defendants filed preliminary objections by way of demurrer.

The court sustained the objections, the complaint was dismissed, and judgment was entered in favor of the defendants. The plaintiff appealed.

The lower court was in error. Article VI, Sec. 602 of the Real Estate Tax Sale Law, as amended May 10, 1951, P. L. 258, 72 PS §5860.602, prescribes that notice of a tax sale shall be published once a week for three consecutive weeks in two newspapers of general circulation in the county and once in a legal journal designated by the court for publication of legal notices. The same section also provides: "In addition to such publications, notice of the sale shall also be given by the bureau, by United States registered mail, return receipt requested, postage prepaid, to each owner as defined by this act at least ten (10) days before the date of sale, addressed to his last known post office address, or if no post office address is known, or if the notice addressed to the owner is not delivered to the owner by the postal authorities, such notice shall be posted on the property."

Since the facts averred in the complaint are to be accepted as true, it is obvious that the Tax Claim Bureau did not comply with the specific requirements of the Act. The Act says that notice shall be given by registered mail *at least* ten days before the date of sale, and then it goes on to say that if the mail notice is not delivered to the owner by the postal authorities, *such* notice shall be posted on the property.

What is the "such notice"? Obviously it is the ten days notice. The defendants argue in their brief that the word *such* "should be construed narrowly." There is no rule, and should be none, in American jurisprudence which paves a narrow roadway leading to a palpable and irremediable injustice. Nor do the courts approve of an interpretation which works a conclusion in defiance of common sense and fair dealing between man and man or man and government.

The defendants say: "The legislature could not have expected the property to be posted ten days before the sale, when it is obvious that a registered letter, sent on the tenth day before a sale, would not be returned until less than ten days before the sale." But the Legislature did not say that the registered letter was to be sent on the tenth day before a sale. It said quite the contrary. It said that the letter was to be sent *at least* ten days before the sale. It was because the Legislature wished to provide for enough time within which to post the property ten days prior to the sale, in the event the registered notice failed of delivery, that the Legislature introduced the modifying phrase "at least." The tax authorities were thus informed by the Legislature that the registered notice should go out enough days ahead of the date of the sale so that in the event the registered letter was not delivered, there would still be time to post the property for ten days. Otherwise why would the Legislature use the

word "such"? If *such* did not refer to the antecedent "ten days" in the Act, it would amount to utter surplusage. Without that interpretation it would have been enough merely to say "notice shall be posted," and this would mean that even one day or even one hour's notice would be enough. All of which would be so flagrantly contrary to the most elementary principle of justice that an interpretation of that character should be accepted only when driven to it by battalions of grammar armed with crystalline spears of clarity. There is not the slightest rhetorical pressure for such an interpretation.

To say that one day's notice or perhaps only one hour's notice would be enough time to acquaint a home owner with knowledge that his habitation was to be sold for taxes is a concept which so challenges the concept of fair dealing that one turns to the armory of the law for an appropriate weapon with which to repulse such a threatened inequity. We find that weapon in the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, §51, which declares that: "Every law shall be construed, if possible, to give effect to all its provisions." Thus the word "such" may not be ignored in a reading and application of the Act.

This Court has had occasion in the past to look at the word "such" under the glass of appellate review. In the case of *Brock's Estate*, 312 Pa. 92, a question arose as to the interpretation of that adjective in a statute which began: "In case of the insolvency of any such individual, partnership, etc." It was argued by the appellant there that "such" meant *any* individual or partnership. Chief Justice MAXEY, writing for the Court, said that such an interpretation would be an "affront" to "both grammar and public policy." He explained further: " 'Such' i.e., 'that kind' of individual, partnership, etc., as used in that sentence can mean

only the individual, etc., who has been duly licensed as a private banker. If the word 'such' does not mean that, it has no place or purpose whatever in the act. If the sentence quoted means what appellants contend it means, the word 'such' is entirely superfluous and should be deleted so that the sentence would read: 'In case of the insolvency of *any* individual,' etc., 'acting as a private banker,' etc. For us to delete a word from an act so as to give it a different meaning is for us to engage in legislation. . . .".

The word "such" in the statute before us could have reference to no other notice than the ten-day notice mentioned earlier in the same section of the statute. The whole purpose of the Act was to see to it that property owners got timely notice. Unless the posting of the notice was timely it would amount to no notice at all, and if "such" is not to be construed to provide for a ten-days' notice then the result would be that even a half-hour's notice by posting would be sufficient. The Legislature could not have intended anything so unjust. Moreover such a fleeting notice would be violative of due process of law.

The registered notice went out on June 7, 1956. It was returned a few days later unclaimed. The sale was not to take place until *July* 7, 1956. Why wasn't the notice posted on the premises sometime between the return of the letter (which could only have been a few days after June 6th) and June 29th, which would have been ten days before the sale? It would almost seem, although there is no charge to that effect, that the tax officials lay low until the very eve of the sale to post the notice so that the possibility of the owner seeing the notice would be reduced to a minimum. The law does not favor entrapment of any kind nor does it look with approval upon maneuvering which beguiles the unwary and the innocent into a loss of property or civil rights.

In the case of *Hess v. Westerwick*, 366 Pa. 90, 96, 97 this Court wisely and courageously said: "It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist.

" 'Whatever else may be uncertain about the definition of the term " 'due process of law' " all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and *without notice* or an opportunity for a hearing. . . .'

"In recognition of this right to notice it has been the settled practice in this State extending back for over a century and a half to give the property owner some reasonable notice that his property is to be sold by process of law whether it be by mortgage foreclosure, execution or for tax defaults. Had the legislature provided for no notice at all there is little doubt the Act would have been invalid as offending these fundamental provisions of both state and federal constitutions. Can it then by indirection do what it cannot do directly? Can it direct notice in one breath so to speak and in the next breath practically say it need not be given? To state the proposition is to answer it."

The purpose of tax sales is to collect taxes, not to drive a man from his property. (*Ross Appeal*, 366 Pa. 100). And when the taxes may be collected and the property saved, consistent with due procedure, it would be an affront to the very concept of government to deny the property owner the opportunity to show that due procedure was not observed, as the plaintiff in this case avers in her complaint. She was entitled to present her case and the order of the court below, there-

fore, is reversed with a procedendo, each party to bear own costs.

Mr. Chief Justice JONES and Mr. Justice BELL dissent, and Mr. Justice BENJAMIN R. JONES concurs in the result.