543 A.2d 1092

**Margaret A. MUDD, Appellant,**

**v.**

**HOFFMAN HOMES FOR YOUTH, INC. and Gerald W. Hagmayer.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1987.

Filed May 6, 1988.

Reargument Denied July 12, 1988.

Larry B. Selkowitz, Harrisburg, for appellant.

Bruce J. Kasten, Philadelphia, for appellees.

Before WIEAND, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

This case was originally commenced before the Court of Common Pleas of York County on or about May 16, 1984 with appellant's filing of a complaint. On March 20, 1986, the court sustained appellees' preliminary objections grounded on a question of venue and directed that the action be transferred to the Court of Common Pleas of Adams County. On April 25, 1986, appellant filed an amended complaint in Adams County along with a concurrent motion for leave to file the amended complaint, which motion was granted on May 30, 1986, leaving appellees twenty days to respond to the amended complaint. Appellees filed timely preliminary objections in the nature of a demurrer on June 19, 1986, claiming all three counts of appellant's amended complaint failed to state a cause of action upon which relief could be granted. After argument, the trial court, by Order dated January 12, 1987, sustained appellees' preliminary objections and granted appellant twenty days to amend its previously-amended complaint.

Appellant purposely elected not to amend and by praecipe filed February 6, 1987 requested judgment in favor of appellees and against herself be entered. In response to appellant's praecipe, the trial court entered judgment in favor of appellees and dismissed the original amended complaint on February 10, 1987. Appellant timely appeals the judgment.

Appellant claims the trial court improperly applied the proper standard of review·in evaluating all three counts of her amended complaint and, consequently, erred in sustaining appellees' demurrer. Appellant contends her amended complaint alleges sufficient facts to state a cause of action and dismissal was improper.

In *County of Allegheny v. Commonwealth*, 507 Pa. 360, 372, 490 A.2d 402, 408 (1985), our Supreme Court set forth the proper scope of review to a challenge to the sustaining of a preliminary objection in the nature of a demurrer:

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976). For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts, *Savitz v. Weinstein*, 395 Pa. 173, 149 A.2d 110 (1959); *March v. Banus*, 395 Pa. 629, 151 A.2d 612 (1959), and every inference fairly deducible from those facts, *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Troop v. Franklin Savings Trust*, 291 Pa. 18, 139 A. 492 (1927). The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. *Savitz v. Weinstein, supra.*

Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259

A.2d 443 (1969); *Botwinick v. Credit Exchange, Inc.*, 419 Pa. 65, 213 A.2d 349 (1965); *Savitz v. Weinstein, supra; London v. Kingsley*, 368 Pa. 109, 81 A.2d 870 (1951); *Waldman v. Shoemaker*, 367 Pa. 587, 80 A.2d 776 (1951). If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *Packler v. State Employment Retirement Board*, 470 Pa. 368, 371, 368 A.2d 673, 675 (1977); *see also Schott v. Westinghouse Electric Corp., supra*, 436 Pa. at 291, 259 A.2d at 449. *See also Whitmer v. Bell Telephone Company of Pennsylvania*, 361 Pa.Super. 282, 522 A.2d 584 (1987); *Brown v. Taylor*, 90 Pa.Commw. 23, 494 A.2d 29 (1985) (quoting *County of Allegheny* ). With these principles in mind, we review appellant's claims.

Count one of the amended complaint is an action for wrongful discharge and counts two and three are grounded on alleged breach of contract claims. Accepting as true all well-pleaded material facts in the complaint as well as all inferences reasonably deducible therefrom, we find appellant was first employed by appellee, Hoffman Homes for Youth, Inc. ("Hoffman Homes"), in 1973 as a social worker. She alleges her terms of employment consisted of oral representations made to her as well as the provisions of Hoffman Homes' employee personnel handbook. Appellant avers her job performance was to be reviewed annually with written evaluations and that she was promised she would be retained as long as her job performance and her written evaluations were satisfactory.

In August 1981, appellant learned that two fellow employees had delivered by mail "illicit drugs" to a child who was residing at Hoffman Homes' York County facility. The amended complaint (paragraphs 9, 10, and 11) is not clear as to whether appellant notified Hoffman Homes' management of this incident or whether management learned of the incident on its own, but appellant avers that upon learning the two employees were merely "reprimanded" for the

incident, she took it upon herself to meet with appellee Gerald W. Hagmayer, executive director of Hoffman Homes at its Gettysburg premises, and unsuccessfully attempted to persuade him to terminate their employment. At that meeting, appellant also notified Hagmayer of other drug "problems" she had perceived on Hoffman Homes' campus. Appellant was dissatisfied with Hagmayer's response and contacted the Hoffman Homes' Board of Directors directly to alert them to the alleged "drug use and child abuse" she perceived as being allegedly "tolerated" by Hoffman Homes.

Appellant avers that in direct retaliation to her actions she was reprimanded and subjected to continual harassment by Hagmayer and other co-workers acting at Hagmayer's behest. Further, appellant avers that in direct retaliation, Hagmayer notified her on February 1, 1982 that he would fire her unless she voluntarily resigned. Subsequently, appellant was given notice of termination on March 1, 1982, to be effective April 30, 1982. In addition to averring her termination was in retaliation to her prior actions concerning the alleged drug problems, appellant avers "Hagmayer maliciously terminated her from her job at [Hoffman Homes] in April, 1982 to prevent her pension benefits from vesting, as further punishment for her having appeared before the [Hoffman Homes] Board of Directors" (Amended Complaint at paragraph 20). At the time of termination, appellant was two months short of the service requirement of ten years for vesting of pension benefits. Although appellant eventually received a hearing and review of her termination by an outside hearing examiner, the Board of Directors voted to uphold her termination and refused to grant her pension benefits.[1]

In her first count for wrongful discharge, appellant avers her discharge violated the Hoffman Homes' personnel policies and the public policy of Pennsylvania, specifically citing the Child Protective Services Law, 11 P.S. § 2201 et seq., in

---

1. The amended complaint does not state what recommendation the outside hearing examiner gave to the Board of Directors.

paragraph 13.[2]  On appeal, in addition to the Child Protective Services Law, appellant claims appellee's actions violated public policy enunciated in various other federal and state laws regarding unlawful use of drugs (appellant's brief at 14–15), however, no mention of these laws were made in the amended complaint.  Appellant also claims that count one avers Hoffman Homes discharged her with specific intent to harm her.

As we recently stated in *Reilly v. Stroehmann Brothers Company,* 367 Pa.Super. 411, 532 A.2d 1212 (1987):

> The well-settled rule in Pennsylvania is that: '[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason.' *Geary v. United States Steel Corporation,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Betts v. Stroehmann Brothers,* 355 Pa.Super. 195, 512 A.2d 1280 (1986); *Banas v. Mathews International Corporation,* 348 Pa.Super. 464, 502 A.2d 637 (1985).  The at-will presumption, uniquely present in employment contracts, is that an employment agreement is presumptively terminable at will by either party;  meaning, an employee may leave a job for any or no reason and an employer may discharge an employee for any or no cause. *Greene v. Oliver Reality, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (1987); *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306 (1986).

However, our courts have recognized a cause of action for wrongful discharge for at-will employees beginning with the seminal case of *Geary, supra,* in which the Supreme Court acknowledged that if the discharge was made with a

2. Appellant's reliance on the Child Protection law as justification of her actions cannot prevail.  Her duty ended when she reported the suspected abuse to her employer.  Section 2204(b) provides:

> [A] member of the staff ... shall immediately notify the person in charge of such institution, school, facility or agency....  *Upon notification, such person in charge or his designated agent, if any, shall assume the responsibility and have the legal obligation to report or cause a report to be made in accordance with section 6.*  (Emphasis added)

specific intent to harm the employee or if the discharge was contrary to public policy an action will lie. *Tourville v. Inter–Ocean Insurance Company,* 353 Pa.Super. 53, 508 A.2d 1263 (1986), *allocatur denied,* 514 Pa. 619, 521 A.2d 933 (1986); *see Darlington, supra.*

■ We agree with the trial court that appellant's amended complaint does not support a discharge violative of public policy. Because appellant did not include the federal and state laws regarding illegal drugs cited to in her brief in the amended complaint, we will not address their possible application, but we do recognize a public policy exists prohibiting activity involving illegal drugs and controlled substances. Appellant asserts in paragraph 13 that her actions of going to the Board of Directors were in accordance with her fulfilling her moral and professional duties as a social worker and in accordance with the legal duties imposed upon her by the Child Protective Services Law, *supra.* As did the plaintiff in *Geary,* appellant by-passed her immediate superiors and pressed her views to higher officials. We find the Supreme Court's analysis in *Geary* to control here. "The praiseworthiness of [appellant's] motives does not detract from [Hoffman Homes'] legitimate interest in preserving its normal operational procedures from disruption." *Geary, supra* 456 Pa. at 183, 319 A.2d at 180. As in *Geary,* the amended complaint discloses a plausible and legitimate reason for appellant's termination, i.e. the preservation of normal management operating procedures. Appellant was not dismissed for seeking the disclosure and punishment of the improper actions of co-workers, but with respect to public policy grounds was terminated for pursuing the matter outside normal management operating procedures. This alone cannot give rise to a non-statutory cause of action for wrongful discharge. By appellant's averments the alleged harassment and retaliatory actions did not occur until after appellant went outside normal operating procedures leading us to conclude that no public policy mandate was violated because the complained of actions were not in response to appellant's attempts of fulfilling her duty, but instead were a direct result of her method of reporting the

co-workers activities and seeking what she deemed to be appropriate action regarding them.

■ Turning now to appellant's claim that her termination was performed with specific intent to harm her, we disagree with the trial court's conclusion that the amended complaint does not support a wrongful discharge action on that ground. Accepting, as we must all well-pleaded material facts in the complaint as true, we find the assertions set forth in paragraph 20, where appellant claims her termination was done in order to prevent her pension benefits from vesting, clearly avers a specific intent on the part of Hoffman Homes to harm appellant. Such an allegation meets both the "disinterested malevolence" and "ulterior purpose" criteria the Supreme Court in *Geary* intended as guidance. *Tourville, supra* 353 Pa.Super. at 56–58, 508 A.2d at 1265–6. Discharging an employee to prevent the vesting of pension benefits demonstrates a malicious desire to harm that will give rise to an action for wrongful discharge. Reviewing the sustaining of a demurrer does not require us to speculate or consider the merits of appellant's claim and we do not do so at this time.

■ Appellant's remaining claims concern the demurrer as to counts two and three for breach of contract. In both counts, appellant avers that the personnel policies embodied in Hoffman Homes' employee personnel handbook constitute an employment agreement between the parties. Simply put, appellant claims appellees intended to be contractually bound by the terms and conditions of the handbook. In *Reilly, supra* 367 Pa.Super. at 415, 532 A.2d at 1214, we stated that in order for a handbook to be construed as a contract it "must contain unequivocal provisions that the employer intended to be bound by it, and, in fact renunciated the principle of at-will employment." We find no such provisions in the instant handbook and find that appellant is an at-will employee.

Additionally, we find neither an express or implied "just cause" provision in the handbook as spoken of in *Banas, supra* 348 Pa.Super. at 483–84, 502 A.2d at 647–648. Our

summary of the law in *Reilly, supra,* 367 Pa.Superior Ct. at 417, 532 A.2d at 1215, is directly applicable in the present case:

In *Richardson v. Charles Cole Memorial Hospital,* 320 Pa.Super. 106, [108] 466 A.2d 1084, 1085 (1983), we held that an employer's 'unilateral act of publishing its policies' in an employee handbook 'did not amount to the "meeting of the minds" required for a contract' when '[t]he terms of the handbook were not bargained for by the parties and any benefits conferred by it were mere gratuitous.' *See Muscarella v. Milton Shoe Manufacturing Company, Inc.,* 352 Pa.Super. 158, [162] 507 A.2d 430, 432 (1986) ('[I]t is well established that failure to adhere to a company personnel policy does not create a cause of action for breach of an employment contract'); *Darlington, supra* (quoting *Richardson* with approval). In *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, [210–214] 511 A.2d 830, 836–38 (1986), we affirmed our holding in *Richardson* when concluding that a handbook should not be accorded contractual significance, stating that:

We believe that the holding in *Richardson, supra,* is more in keeping with the philosophy of the at-will presumption than is the line of cases finding contractual significance in handbooks. And, we might add, it is more in keeping with our analysis in *Darlington, supra,* wherein we cautioned against further burdening of the judicial process with expanding the bases for recovery in this field. *Richardson* held that handbooks are not contracts because they lack consideration. We need not analyze whether there is consideration here because we find that a reasonable employee in appellant's position would not have understood that in distributing the handbook, the employer intended to be legally bound.

We also believe that cases which find contractual significance in handbooks have bypassed an important inquiry. Before we can decide whether there is a valid offer and acceptance with the distribution of a hand-

book, a threshold question must be asked: With the distribution of the handbook, does the at-will employee reasonably understand that the employer intended to alter the pre-existing at-will status?

In analyzing an employer's publication and distribution of an employee handbook, we should not necessarily presume that the employer intended to alter the previous existing contractual relationship between the parties; nor should we assume that the employee believed that the handbook was a legally binding instrument....

. . . .

... [I]n deciding whether the employer newspaper intended to recontract with all employees who received the handbook, we must ask whether the employment handbook evidences an intent that it became a legally binding contract that replaces the pre-existing at-will status. This is a question of interpretation and is therefore left to the court.

Reading the handbook provisions as a whole, we do not believe a reasonable person in appellant's position would have interpreted it as converting appellant from an at-will employee to an employee with an indefinite contract who could never be dismissed without objective cause. Therefore, we affirm the sustaining of the demurrer as to the counts two and three of the amended complaint.

Accordingly, we affirm in part and reverse in part and remand for further proceedings consistent with this Opinion. We affirm the trial court's sustaining of a demurrer as to the amended complaint's count one argument concerning a cause of action for wrongful discharge violative of public policy and reverse the sustaining of a demurrer as to the count one claim that the discharge was performed with specific intent to harm. Further, we affirm the granting of the demurrer as to counts two and three. In view of appellant's earlier election not to file a second amended complaint, but electing to appeal, and considering that from

the face of the complaint already once-amended, any further attempt to amend would be unavailing, we do not grant appellant an opportunity to further amend her amended complaint.

Affirmed in part, reversed in part and remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

Concurring and Dissenting Opinion by CERCONE, J.

CERCONE, Judge, concurring and dissenting:

I cannot accept the view set forth in the majority's decision that this court is incapable of affording relief to a responsible employee for an arbitrary and retaliatory discharge from employment when that employee sought to perform a basic duty implicit in her office as a social worker at the Hoffman Homes for Youth. I therefore dissent.

For more than nine years appellant Margaret Mudd was employed by Hoffman Homes as a social worker. On February 1, 1982 she was informed by the agency's executive director Gerald Hagmayer that he would fire her unless she voluntarily resigned. Mudd did not resign and, subsequently, she was given notice of termination on March 1, 1982, to be effective April 30, 1982. The majority now holds, while admitting a public policy interest in prohibiting activity involving illegal drugs and controlled substances, that the mere fact that Hoffman Homes alleged "a plausible and legitimate reason for appellant's termination, i.e. the preservation of normal management operating procedures" is sufficient to uphold the lower court's grant of appellees' preliminary objections. I am unable to agree that the appellees' claimed interest in "normal operating procedures" is of sufficient weight to supersede what I perceive to be facts which raise a clear mandate of public policy interest.

In an amended complaint, dismissed by the order now on appeal, Mudd alleged in paragraph 9:

When Mrs. Mudd learned about this *drug-related inci-dent,* she became very alarmed that an act of *child abuse* had occurred at HHY. [emphasis added]

At paragraph 13, she alleged:

When Mrs. Mudd contacted the HHY Board of Directors, she did so in fulfillment of her moral and professional duties as a social worker and in accordance with the legal duties imposed upon her by the Pennsylvania Child Protective Services Law, Act of November 26, 1975, P.L. 438, No. 124, § 1, 11 P.S. 2201 *et seq.*

By setting forth these concerns, Mudd was pleading the public policy issues which she would later be required to prove at trial. The majority concludes that because appellant did not state relevant federal and state laws regarding illegal drugs it would not address their possible application. I find no authority which requires a party to plead relevant statutory authority, in a complaint, to raise an issue of public policy and, therefore, I disagree with the majority's conclusion that this aspect of the public policy debate should be disregarded. As to Mudd's claim of duty pursuant to the Child Protective Services Law, the majority frames the public policy issue in terms of Mudd's failure to abide by internal operating procedures rather than reviewing the public policy issue in terms of the alleged child abuse.

In *Yaindl v. Ingersoll–Rand Company, Inc.,* 281 Pa.Super. 560, 422 A.2d 611 (1980), a panel of this Court was called upon to review an action for wrongful discharge and stated:

It is enough to note that in appraising the propriety of the lower court's order dismissing appellant's claims, we must weigh several factors, balancing against appellant's interest in making a living, his employer's interest in running its business, its motive in discharging appellant and its manner of effecting the discharge, and any social interests or public policies that may be implicated in the discharge.

*Id.,* 281 Pa.Superior Ct. at 577, 422 A.2d at 620. In order to "overcome the employer's interest in running a business, the employee must show a violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.'" *Turner v. Letterkenny Federal Credit Union,* 351 Pa.Super. 51, 55, 505 A.2d 259, 261 (1985) (quoting *Novosel v. Nationwide Insurance Company,* 721 F.2d 894, 899 (3d Cir.1983)). The more important the public policy implicated in the discharge, the more difficult it will be for the discharging employer to assert a sufficient separate and legitimate business reason to justify the discharge.

As was stated in *Cisco v. United Parcel Services, Inc.,* 328 Pa.Super. 300, 476 A.2d 1340 (1984), "The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision." *Id.,* 328 Pa.Superior Ct. at 306, 476 A.2d at 1343 (quoting *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505, 512 (1980)). *Accord Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (as a result of the public policy against unnecessarily stigmatizing former offenders, Criminal History Record Information Act, 18 Pa.C.S.A. § 9125(b), a public employer could not deny a former offender employment on the basis of a prior conviction for which the offender had been pardoned, unless the conviction was reasonably related to fitness to perform the job sought); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (due to the importance of trial by jury in our legal system, an employer could not discharge an employee because the employee accepted service on a jury) (citing cases from sister states); *Molush v. Orkin Exterminating Co., Inc.,* 547 F.Supp. 54 (E.D.Pa.1982) (former employee who alleged that he underwent a polygraph examination, pleaded valid cause of action for tortious discharge under public policy embodied in Pennsylvania anti-polygraph statute, 18 Pa.C.S.A. § 7321).

The precise extent to which the employer's interest in running his business is limited by considerations of public policy cannot be stated but must be worked out on a case-by-case basis. In the case *sub judice,* the majority has merely looked to the fact that the pleadings show the employer had a plausibly legitimate reason for the discharge without weighing that interest against the public policy considerations at stake.

I would find that appellant's allegation of suspected child abuse raises, *per se,* public policy implications which must be explored beyond the pleading stage. My primary concern in this case is that we have not heard Ms. Mudd's testimony nor reviewed and considered her evidence. In this situation, we cannot conduct the required balancing test on the basis of the pleadings only.[1]

Further, I would find that the Child Protective Services Law provides evidence of legislative intent to protect individuals who fulfill their obligation to take steps necessary to prevent the continuance of suspected child abuse.

Section 4 of the Child Protective Services Law provides in pertinent part:

(a) Any persons who, in the course of their employment, occupation, or practice of their profession come into contact with children shall report or cause a report to be made in accordance with section 6 [11 P.S. § 2206] when they have reason to believe, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child.

1. In *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988), this court sustained the trial court's denial of plaintiff's petition to remove nonsuit after plaintiff had an opportunity to present all its proferred evidence in its case in chief. In *Yaindl v. Ingersoll-Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611 (1980), this court affirmed the grant of summary judgment motion, in defendant's favor, following a review of the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits which supported the determination that there were no issues of material fact.

(b) Whenever any [social worker] is required to report ... in his capacity as a member of the staff of a ... public or private institution, school, facility, or agency, he shall immediately notify the person in charge of such institution, school, facility or agency, or the designated agent of the person in charge. ...

\* \* \* \* \* \* \*

(d) Any person who, under this section, is required to report or cause a report of suspected child abuse to be made and who, in good faith, makes or causes said report to be made and who, as a result thereof, is discharged from his employment or in any other manner is discriminated against with respect to compensation, hire, tenure, terms, conditions or privileges of employment, may file a cause of action in the court of common pleas of the county in which the alleged unlawful discharge or discrimination occurred for appropriate relief. ...

11 P.S. § 2204.

While it appears that this Act may have relieved Ms. Mudd of any legal obligation to take further action after informing Hagmayer of her concerns, it does not restrict her from making her complaint or allegation at a higher level. At the pretrial stage, there is neither evidence of an internal policy outlining complaint procedures nor evidence that Ms. Mudd's complaints caused substantial disruption to the operating procedures of Hoffman Homes. The firing of a social worker who acts in good faith to fulfill her ethical and professional obligations raises a question of great public import.

Contrary to the majority's assertion, society's interest in protecting the children placed in the protective custody of a public or private agency manifestly presents a mandate to the court to allow Ms. Mudd to proceed past the pleading stage. I write with full recognition of the weight the courts of this Commonwealth have accorded to an employer's interest in controlling its workforce. However, in balancing that interest against society's interest in doing its utmost to protect our precious future citizens I can reach no other

conclusion than that this Court should, at the least, recognize a cause of action based on the allegations contained in appellant's complaint.  Undoubtedly we will be asked to review this case again after a record has been made.  That would be the proper time to balance the competing interests in question here.  In my judgment, the order of the Court of Common Pleas of Adams County should be reversed and this case remanded for trial on all claims.