## Darcy v. Overlock

*Edward J. White,* for plaintiffs.
*Cynthia Ann Dyrda,* for defendants.

REIBMAN, *J.,* January 15, 1993—The Reverend Afaf Darcy, an ordained minister of the United Church of Christ, and the Salem United Church of Christ, where the Rev. Darcy is pastor, sought to enjoin the Penn Northeast Conference of the United Church of Christ and its conference minister, the Rev. Donald Overlock, from conducting a disciplinary review hearing against the Rev. Darcy. Finding the court lacks jurisdiction as to part and the plaintiffs have failed to state a claim upon which relief can be granted as to the remainder, the court dismissed the complaint.[1]

---

1. Plaintiffs requested a preliminary injunction, which the court set for hearing on Tuesday, October 20, 1992. In the interim, defendants moved to dismiss the complaint and agreed to maintain the status quo by not taking any action adverse to the Rev. Darcy prior to the disciplinary review hearing scheduled for October 28, 1992.

In response to the plaintiffs' sense of urgency, the court required briefs on defendants' motion to dismiss on an expedited basis. Defendants' brief was filed timely. Plaintiffs' brief was due on Friday, October 16, 1992. It was the court's stated intention to announce its resolution of the motion to dismiss on Monday, October 19, 1992, in order to afford counsel the courtesy of not having to appear in court on the following day if the court was going to dismiss the case.

The Rev. Darcy was ordained in July 1985, and for the past four years has been the minister for the Salem Church. She was notified by defendants that a disciplinary review hearing would be held on charges related to her ministry. Plaintiffs requested the court enjoin such proceedings until defendants afforded them due process, including adequate notice, opportunity to be heard, representation of her counsel, and equal protection of the law.

The First Amendment to the U.S. Constitution requires church and state be, and remain, separate. It has been well-established by a long line of cases that ecclesiastical decisions are not proper matters for a secular court. *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710 (1976); *Presbyterian Church v. Hull Memorial Presbyterian Church,* 393 U.S. 440, 449 (1969); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 116 (1952); *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1 (1929); *Watson v. Jones,* 80 U.S. (13 Wall.) 666 (1871).

The rights of a church, whether on a local or broader level, to choose its minister without judicial intervention or oversight is central to the well-being of that body.

"[P]erpetuation of a church's existence may depend upon those whom it selects to preach its values, teach

---

A representative from the office of plaintiffs' counsel telephoned the court on Friday afternoon, October 16, 1992, to report some difficulty with its duplicating equipment. The court granted plaintiffs' request to have their brief delivered to the undersigned judge's residence by noon on Saturday, the following day. On Saturday, a note was delivered to the undersigned's residence saying plaintiffs' brief would be available by 10 p.m. that evening. Plaintiffs' brief was not delivered to the undersigned's residence at all that evening or even on the next day but to the court on Monday, October 19, 1992, after counsel were notified of the court's action dismissing the complaint.

its message, and interpret its doctrines both to its own membership and the world at large." *Rayburn v. General Conference of Seventh-Day Adventists,* 772 F.2d 1164, 1167 (4th Cir. 1985), *cert. denied,* 478 U.S. 1020 (1986). And: "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *McClure v. Salvation Army,* 460 F.2d 553, 560 (5th Cir. 1972).

Given the central role of a minister in the life of the church—its "voice" or "lifeblood," *Minker v. Baltimore Annual Conference of United Methodist Church,* 904 F.2d 1354, 1356, 1357 (D.C. Cir. 1990)—the selection of who it shall be is of prime ecclesiastical concern. A civil court has no right to probe the mind of the church in the selection of personages so central to its very existence and purpose. *United Methodist Church v. White,* 571 A.2d 790, 794 (D.C. 1990); *Rayburn v. General Conference of Seventh Day Adventists, supra.*

Plaintiffs appear not to question defendants' right to determine the Rev. Darcy's "ministerial fitness." Plaintiffs' brief at pp. 25 and 44. Rather, they allege the proposed procedure to do so violates the Rev. Darcy's constitutional rights to due process and equal protection and contractual rights of due process.

Plaintiffs' constitutional claims—due process and equal protection—are difficult to understand.[2] The constitu-

---

2. Plaintiffs framed the issue in this fashion:

"In the case at bar, the question before this court is whether the procedures being followed by the defendants violate the constitutional requirements of due process and equal protection of the law, thereby depriving Rev. Darcy and Salem United Church of Christ of important property rights, or equal protection of the law, in violation of the Constitution."

tional guarantees of due process and equal protection are directed against abuses or deprivations by the state or officials acting on behalf of it, not private persons. Plaintiffs have not alleged defendants are somehow invested with the authority of the state. Indeed, it is difficult to imagine these defendants having the cloak of such state authority. Defendants are a religious body and an individual acting on behalf of one. They have a First Amendment right to be free of state involvement which is inconsistent with the requirement that "state action" be established as a precondition for determining liability for depriving one of due process or equal protection of the law. See, e.g., *Collins v. City of Harker Heights, Texas,* 112 S.Ct. 1061, 1069 n. 10, 117 L.Ed.2d 261 (1992); *Tulsa Collection Services v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565, 575 (1988); *Imperiale v. Hahnemann University,* 776 F. Supp. 189, 194-195 (E.D. Pa. 1991).

As to plaintiffs' other claims, it is true that churches are not above the law. They may be held liable for certain temporal claims. *Watson v. Jones, supra,* 80 U.S. at 670. For example, their employment decisions may be subject to Title VII of the Civil Rights Act, Title 42 U.S.C. §2000(e), or the Age Discrimination in Employment Act, Title 29 U.S.C. §621 et seq. (ADEA), where the position does not involve the church's spiritual functions or ministers whose job it is to implement them.[3]

---

Plaintiffs' brief in support of motion for preliminary injunction and in opposition to defendants' motion to dismiss for lack of subject matter jurisdiction at p. 15.

3. In their complaint, at paragraph 22(d), plaintiffs alleged defendants discriminated against the Rev. Darcy "on the basis of sex and age." The complaint does not disclose her age. Nor does it represent that plaintiffs first exhausted their administrative remedies before instituting suit as required by Title VII and the ADEA. *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407 (3rd Cir. en banc 1991); *Trevino-Barton v. Pittsburgh National Bank,* 919 F.2d 874 (3rd Cir.

Compare *Minker, supra,* (maintenance of minister's age discrimination suit would violate free exercise clause), with *EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277 (5th Cir. 1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982) (action involving seminary's administrative and support staff not violative of free exercise clause); *EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir. 1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981) (action involving secular teacher in religious educational institution not violative of free exercise clause); *Whitney v. Greater New York Corp. of Seventh-Day Adventists,* 401 F.Supp. 1363 (S.D.N.Y. 1975) (action involving typist-receptionist not violative of free exercise clause).

And where a church burdens its activities voluntarily through contracts, such contracts are fully enforceable in civil court. *Minker, supra,* 894 F.2d at 1359; *Watson v. Jones, supra.* 80 U.S. at 714. See also *Presbytery of Beaver-Butler of the United Presbyterian Church v. Middlesex Presbyterian Church,* 507 Pa. 255, 489 A.2d 1317 (1985), and *First Church of the Brethren of Lewistown v. Snider,* 367 Pa. 78, 79 A.2d 422 (1951). Civil courts may resolve issues involving property ownership by applying neutral principles of law which are not predicated upon any religious doctrine. In those instances, courts of the Commonwealth are to apply the same principles of law as would be applied to non-religious associations. *Presbytery of Beaver-Butler, supra,* 507 Pa. at 266, 489 A.2d at 1323.[4]

---

1991); *Rabzak v. County of Berks,* 815 F.2d 17 (3rd Cir. 1987); *Gay v. Avco Financial Services Inc.,* 769 F. Supp 51 (D.P.R. 1991).

4. Cases cited by plaintiffs for the proposition that the court must exercise jurisdiction over the Rev. Darcy's property or contractual rights ignores the fact that in those cases the church officials themselves initiated the action in the civil court. Having themselves invoked the court's jurisdiction, they could not later attack the court's

Here, plaintiffs contend the United Church of Christ's Manual on Ministry sets forth the church's policies and procedures regarding one's fitness for its ministry, the conduct of its ministers and disciplinary proceedings regarding its ministers. However, plaintiffs do not allege the manual is a contract containing unequivocal provisions to which defendants intended to be bound and which obligate the defendants to the specific nature of "due process" demanded by the plaintiffs. See *Scott v. Extracorporeal Inc.*, 376 Pa. Super. 90, 545 A.2d 334 (1988); *Mudd v. Hoffman Homes for Youth Inc.*, 374 Pa. Super. 522, 543 A.2d 1092 (1988). Indeed, plaintiffs' brief states the

"Manual on Ministry suggests collegiality, reconciliation, guidance and a non-confrontational approach to any problem or difficulty that may exist." Plaintiffs' brief at page 5. And:

"The manual further outlines a procedure for a disciplinary hearing 'to be used *or adapted for use* by an Association Committee on the Ministry...'" Plaintiffs' brief at page 37. (emphasis added) And: "In fact, considering the manual's *suggestion* that the Committee *may* avail itself of legal counsel..." Plaintiffs' brief at page 38. (emphasis added)

The manual is a common sense, inspirational statement by the United Church of Christ setting forth its policy in general terms. It does not specify the type of due process to which it refers. Plaintiffs are entitled to no relief on the basis of the manual.

---

power to rule on the merits of their dispute. See *Kaminski v. Hoynak*, 373 Pa. 194, 95 A.2d 548 (1953), and *First Church of the Brethren of Lewistown v. Snider*, 367 Pa. 78, 79 A.2d 422 (1951). Moreover, plaintiffs' claim as to the Rev. Darcy's "property interest" confuses it with those cases involving the disposition of real or personal property which applied neutral principles of law. The Rev. Darcy's "property interest" must satisfy the requirement of "state action." *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).