# Dufner v. American College of Physicians

*Joseph McGinley,* for appellants.
*Richard J. Sexton,* for appellees.

TERESHKO, *J.,* July 12, 2005—

## I. PROCEDURAL HISTORY

Plaintiff appeals from the order of this court sustaining defendants' preliminary objections and dismissing plaintiff's complaint with prejudice dated November 3, 2004.

## II. FACTUAL BACKGROUND

Alison Dufner (plaintiff) was a full-time employee for the American College of Physicians (ACP) as a communications coordinator and board of governor's administrator. Plaintiff began working at ACP in September 1998, and she was terminated on October 30, 2003.

Plaintiff subsequently commenced this cause of action against ACP by filing a complaint on June 25, 2004.

Plaintiff alleges that her dismissal was retaliation for reporting complaints about a hostile work environment created by her co-workers. (Complaint dated 7/16/04 pp. 1-3.) However, ACP contends that plaintiff was an at-will employee who was terminated from ACP for allegations of falsifying her time sheet, pursuant to ACP's disciplinary policy. (Answers to preliminary objections

dated 10/27/04, exhibit B.) Plaintiff states that she was wrongfully accused of falsifying the time sheets in October 2003, both "on paper and through the computer." (Complaint dated 7/16/04, ¶29.)

In her complaint, plaintiff claims that she had an implied contract with ACP, and that ACP breached its contract by wrongfully terminating her employment. The complaint also includes counts for defamation, contractual bad faith and wrongful discharge in violation of public policy. (Complaint dated 7/16/04.)

## III. LEGAL ARGUMENT

### Breach of Contract—At-Will Employee

Counts I and II of the plaintiff's complaint claim that plaintiff's employment was terminated in violation of a contract ACP had with its employees. (Complaint pp. 5-6.) Plaintiff claims that this contract was breached when her employment was terminated approximately one year after she had made complaints about problems she was having with her co-workers and supervisor, and that her termination was in retaliation for utilizing certain "human resources protocols" when she made these complaints. (Complaint pp. 2-6.) Plaintiff has failed to identify a document which would qualify as a "contract" or a person who allegedly communicated this oral agreement to her.

Three elements are necessary to plead properly a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Williams v. Nationwide Mutual Insurance Co.,* 750 A.2d

881, 884 (Pa. Super. 2000). In *Presbyterian Medical Center v. Budd,* 832 A.2d 1066 (Pa. Super. 2003), our Superior Court affirmed the trial court's granting of preliminary objections to a breach of contract claim where plaintiff's complaint did not indicate whether the alleged contract was written, did not attach a copy of any written contract, and did not explain why a written contract could not be obtained in accordance with Pa.R.C.P. 1019(i). Thus, in order to prove that a contract existed in a case, plaintiff must attach a copy of the contract to the complaint. The plaintiff failed to attach any contract to her complaint, nor has she made any effort to verify the claim that she has an employment contract with ACP resulting in a dismissal of plaintiff's claim for breach of contract.

In addition, the law in Pennsylvania states that, where an at-will employee relationship exists, a person can be terminated for a good reason, bad reason, or no reason at all. *Nix v. Temple University,* 408 Pa. Super. 369, 375, 596 A.2d 1132, 1135 (1991). To overcome the presumption of at-will employment, the contract alleged by plaintiff must be clear and definite. If the language is ambiguous or there is no definite contractual agreement, the purported agreement will be strictly reviewed because of the persuasive presumption that employment is at-will. *Id.* at 376, 596 A.2d at 1135.

Accordingly, an employee bringing an action for wrongful termination bears the burden of overcoming the "firmly entrenched presumption" that she is an at-will employee who can be discharged for any reason or no reason at all. *Rapagnani v. Judas Company,* 736 A.2d 666, 669 (Pa. Super. 1999). Further, the sine qua non of

the at-will employment presumption is that, except in rare circumstances, the discharge will not be reviewed in a judicial forum. *Id.* Therefore, to rebut the presumption of at-will employment, which plaintiff must do in this case, plaintiff must establish the following:

(A) An agreement for a definite duration;

(B) Agreement specifying that the employee will be discharged for just cause only;

(C) Sufficient additional consideration; or

(D) Applicable recognized public policy exception.

In considering these elements, plaintiff has failed to prove any aspect of these which would overcome a presumption for at-will employment. Plaintiff has not provided any evidence that there was a definite duration of employment agreement between her and ACP. Plaintiff attempts to assert that a contractual relationship exists through policies outlined in an employee handbook. (Complaint, ¶49.) Under Pennsylvania law, however, it is clear that an employer is not bound by statements of policy in employee handbooks without a very clear expression of an intent to create a binding contractual obligation. *Jacques v. Akzo International Salt Inc.,* 422 Pa. Super. 419, 430, 619 A.2d 748, 753 (1993). In addition, our courts have consistently held that an employee handbook, manual, or other communication "only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so." *Id.* Specifically, "in order for a handbook to be construed as a contract, it 'must contain unequivocal provisions that the employer intended to be bound by it, and, in fact denunciated the principle of at-will employment.' " *Mudd v. Hoffman Homes for Youth Inc.,* 374 Pa. Super. 522,

529, 543 A.2d 1092, 1096 (1988), see also, *Richardson v. Charles Cole Memorial Hospital,* 320 Pa. Super. 106, 108, 466 A.2d 1084, 1085 (1983). According to *Richardson,* such inquiry must be made prior to any determination that there was a valid contract encompassing an offer, acceptance and consideration. 320 Pa. Super. at 108, 466 A.2d at 1085.

In *Mudd,* our Superior Court affirmed the lower court's order sustaining preliminary objections of defendants, holding that appellant's complaint did not state a cause of action for breach of contract because the personnel policies embodied in the appellee employer's employee personnel handbook did not constitute an employment agreement between the parties. *Id.* at 523-24, 543 A.2d at 1092.

Plaintiff's complaint is devoid of any allegations that there was an unequivocal expression of binding effect in accordance with principles set forth in *Mudd* and *Richardson.* Thus, plaintiff could not be considered an at-will employee of ACP.

Plaintiff's complaint may also be interpreted to raise a claim for promissory estoppel based upon her purported reliance on the stated policy. However, that claim would also fail. The Supreme Court of Pennsylvania has held that an at-will employee does not have a claim for promissory or equitable estoppel because of his alleged reliance on an employer's promise. *Paul v. Lankenau Hospital,* 524 Pa. 90, 95, 569 A.2d 346, 348-49 (1990). The continued viability of this rule is shown by the Supreme Court of Pennsylvania's rejection of a recent attempt by an intermediate appellate court to carve out an exception to this rule. *Niehaus v. Delaware Valley Medical Center,*

429 Pa. Super. 119, 125, 631 A.2d 1314, 1317-18 (1993), *rev'd,* 538 Pa. 481, 649 A.2d 433 (1994).

## *Wrongful Discharge in Violation of Public Policy*

In Count IV of plaintiff's complaint, she asserts a claim of wrongful discharge in violation of public policy for what she deems retaliation for making complaints regarding a hostile work environment related to problems with her co-workers and supervisor. It is noteworthy that the plaintiff's complaints were made to human resources in the summer of 2002; however, plaintiff's employment was not terminated until October 2003.

In Pennsylvania, it is well-settled that an at-will employee can maintain an action for wrongful discharge against the employer if the discharge is motivated by a specific intent to harm the employee, or the discharge violates a clear mandate of public policy. *Geary v. United States Steel,* 456 Pa. 171, 319 A.2d 174 (1974); *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306 (1986). "The exception in *Geary* is limited to those cases where the discharge is violative of a *clear mandate* of public policy." *Gillespie v. St. Joseph's University,* 355 Pa. Super. 362, 365, 513 A.2d 471, 472-73 (1986). (emphasis in original) To justify the public policy exception, an employee must point to clear public policy articulated in the Constitution, statutes, regulations, or judicial decisions of Pennsylvania, which are directly applicable to facts in the case. *Yetter v. Ward Trucking Corp.,* 401 Pa. Super. 467, 474, 585 A.2d 1022, 1026 (1991). In *Yetter,* our Superior Court affirmed the trial court's sustaining of defendant's preliminary objections where allegations in the wrongful discharge

count did not point to any statutorily or judicially recognized public policy which was violated by appellee in terminating appellant. In the absence of such allegations, appellee, an at-will employee, did not state a cause of action in wrongful discharge. *Id.* at 476, 585 A.2d at 1027.

In so holding the court stated,

"Instantly, appellant has failed to point to any statutorily or judicially recognized public policy which was violated by appellee in terminating appellant. In support of the count in wrongful discharge, the complaint alleges that appellee selectively enforced its company rules against appellant; that appellant's supervisor . . . , personally disliked and was jealous of appellant, and appellee exaggerated or fabricated numerous incidences of job misconduct by appellant. While appellee's alleged behavior may be reprehensible, the allegations simply do not rise to the level of significant and recognized public policy violations which would support a cognizable cause of action for wrongful discharge. None of the allegations 'strike at the heart of the citizen's social right, duties, and responsibilities.' Appellant has failed to state a cause of action for wrongful discharge." *Id.* at 477, 585 A.2d at 1027.

Further, it is not sufficient that the employer's action toward the employee is unfair. *Davenport v. Reed,* 785 A.2d 1058, 1063 (Pa. Commw. 2001). Furthermore, even if an important public policy is involved so as to invoke the public policy exception for plaintiff's claim, an employer may still discharge an at-will employee if the employer has a separate, plausible and legitimate reason for the discharge. *Id.* at 1064.

Count VI of plaintiff's complaint fails to identify any constitutional provision, statute regulation or judicial decision to bring her claim within the public policy exception. Instead, plaintiff relies on vague allegations of hostile work environment, and alleged retaliation against plaintiff for complaining of the working environment to ACP's human resources department.

Numerous Pennsylvania courts who have analyzed the public policy exception to the at-will doctrine have emphasized that the narrow scope of this remedy only applies when the employment is at-will. *Darlington v. General Electric*, 350 Pa. Super. 183, 206, 504 A.2d 306, 318 (1986). Assertions that an employer acted intentionally, wrongfully and without justification in discharging an at-will employee do not allow recovery where important and well-recognized facets of public policy are not at stake. *Id.* at 208-209, 504 A.2d at 319. Further, courts are reluctant to allow recovery based on novel theories of public policy. *Id.*

The *Darlington* court recounted the only reported decisions in Pennsylvania upholding a public policy claim. Employees have established the public policy exception to the employment at-will doctrine when employment was terminated for the following reasons:

(a) serving on jury duty;

(b) refusing to submit to polygraph tests in violation of Pennsylvania statute;

(c) reporting motor vehicle violations;

(d) refusing to violate antitrust laws; and

(e) refusing to participate in political lobbying efforts. *Id.* at 209-10, 504 A.2d at 319.

Other cases have also defined the public policy exception as a narrow one. In *Gillespie,* St. Joseph's University fired an employee based on accusations of criminal conduct made by two co-workers. 355 Pa. Super. at 365, 513 A.2d at 472-73. While no criminal charges were formally brought against the employee, his employment was terminated by St. Joseph's. *Id.* In his complaint, he claimed that it was against public policy to terminate a person's employment based on unsubstantiated allegations of criminal conduct. The trial court sustained St. Joseph's preliminary objections and our Superior Court affirmed. *Id.*

Indeed, Pennsylvania courts have even ruled that private sector employees discharged in retaliation for whistle blowing do not have a cause of action for retaliatory discharge, because Pennsylvania's whistle blower statute applies only to public employees. *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa. Super. 174, 649 A.2d 712 (1994).

Although plaintiff alleges that she was subject to a "hostile work environment," she fails to allege that she was subject to any unlawful discrimination, or that the hostility was a violation of constitutional, statutory, or regulatory acts. Nor did she contend that such conduct fell within the narrow listed exceptions listed in *Darlington,* which would enable her to make a legitimate public policy claim for wrongful discharge.

## Contractual Bad Faith Claim

Count III of plaintiff's complaint asserts a breach of defendant's duty of good faith and fair dealing. Specifically, plaintiff states that the facts supporting her

claims for breach of contract and public policy wrongful discharge also support a claim of contractual bad faith. As a matter of law, an action for breach of the implied duty of good faith and fair dealing cannot be maintained, insofar as the underlying claim is for termination of an at-will employment relationship. *Donahue v. Federal Express Corp.*, 753 A.2d 238 (Pa. Super. 2000). Although the duty of good faith and fair dealing exists in an at-will employment contract, there is no bad faith when an employer discharges an at-will employee for good reason, bad reason, or no reason at all, as long as no statute or public policy is implicated. *Id.* In *Donahue,* our Superior Court affirmed the trial court's sustaining of defendant's preliminary objections and where appellant could not, as a matter of law, maintain an action for breach of the implied duty of good faith and fair dealing, where the underlying claim was for termination of an at-will employment relationship. *Id.*

## Defamation

Plaintiff also asserts claims for defamation, specifically ACP accusations of her falsifying her time sheet. The only information plaintiff provides in her complaint identifying the specific act of either libel or slander is paragraph 29 where she states, "In October 2003, Ms. Dufner was accused by Ms. Heller of falsifying a time sheet, both on paper and through computer."

"A publication is defamatory if it tends to harass the reputation of another so as to lower him or her in the estimation of the community or if it tends to deter third persons from associating or dealing with him or her."

*Sobel v. Wingard,* 366 Pa. Super. 482, 485-86, 531 A.2d 520, 522 (1987) (citing *Corabi v. Curtis Publishing Co.,* 411 Pa. 432, 273 A.2d 899 (1971)).

There are two kinds of defamation. One type is slander, which occurs when words which are spoken are defamatory. *Id.* (citing *Solasko v. Paxton,* 383 Pa. 419, 119 A.2d 230 (1956)). Although plaintiff pleads a count for slander in her complaint, she fails to cite to any incident in her complaint where information about her falsifying time sheets was communicated to a third person verbally. Thus, she fails to adequately state a claim for slander under the law.

The second kind of defamation is libel. Libel is maliciously written or printed material which tends to blacken a person's reputation or to expose the person to public hatred, contempt, or ridicule or injure the person in his or her business or profession. *Id.* Plaintiff also pleads a count for libel in her complaint, however this claim must fail for several reasons.

In order for defamation to occur for either a libel or slander claim, the defamatory statement must be "published," that is, communicated to a third person. *Id.* The assertion that the falsification of plaintiff's time sheet was made "on paper and through computer," indicates a written communication that would constitute a libel claim.

In an action for defamation, plaintiff has the burden of proving the following:

(a) The defamatory character of the communication;

(b) Its publication by the defendant;

(c) Its application to the plaintiff;

(d) The understanding by the recipient of its defamatory meaning;

(e) The understanding by the recipient of the communication as intended to be applied to the plaintiff;

(f) Special harm resulting to the plaintiff from its publication; and

(g) Abuse of a conditionally privileged communication. *Sobel,* 366 Pa. Super. at 486, 531 A.2d at 522.

Plaintiff's complaint fails to explain: (1) how the allegedly defamatory communications were published; (2) to whom it was published; and (3) the absence of any privilege applicable to defendant.

Any defamatory communication must be expressed to a third party to result in publication. *Elia v. Erie Insurance Exchange,* 430 Pa. Super. 384, 391, 634 A.2d 657, 660 (1993).

"In addition, liability for publication of a defamatory matter may be defeated by a privilege to publish it." *Sobel,* 366 Pa. Super. at 487, 531 A.2d at 523 (citing *Agriss v. Roadway Express Inc.,* 334 Pa. Super. 295, 483 A.2d 456 (1984)). "An employer has an absolute privilege to publish defamatory matters in notices of employee terminations." *Id.* "This absolute privilege was extended in *Agriss* to include publications of defamatory material in warning letters. Moreover, evaluations of an employee by an employer are deemed to be consented to by the employee." *Id.* (citing *Baker v. Lafayette College,* 350 Pa. Super. 68, 504 A.2d 247 (1986)).

The instant publication is solely related to plaintiff's employment and his work performance. In *Keddie v. Pennsylvania State University,* 412 F. Supp. 1264 (M.D.

Pa. 1976), as in *Wendler v. DePaul,*[1] and *Baker,* the court held that an employer's evaluative statements of an employee which were critical of the employee's job performance were not defamatory. *Sobel,* 366 Pa. Super. at 487, 531 A.2d at 523. In *Sobel,* our Superior Court upheld the trial court's order granting defendant's demurrer to the libel action. The court in *Sobel* found that an evaluation statement, read in the context of an employment-related report, is not capable of defamatory meaning. Thus, according to the case law, assuming that the appellate court finds that the information regarding plaintiff's employment status was defamatory, it is privileged information as an employee evaluation and is not actionable.

In addition, plaintiff fails to state specifically to whom the information was published and how it was published. A necessary element of a defamation action is publication or communication to a third party. *Suppan v. Kratzer,* 660 A.2d 226, 229 (Pa. Commw. 1995). A defamatory action must generally allege: (1) the defamatory character of the communication, (2) publication of the communication to a third party, (3) that the communication refers to the plaintiff, (4) the third party's understanding of the communication's defamatory character, and (5) injury. *Id.* at 229 n.3 (citing *Petula v. Mellody,* 138 Pa. Commw. 411, 588 A.2d 103 (1991)).

The court in *Suppan* stated that if plaintiff "does not allege to whom the allegedly defamatory statement was published, he has not properly alleged defamation." *Suppan, supra* at 229 (citing *Raneri v. DePolo,* 65 Pa. Commw. 183, 441 A.2d 1373 (1982)). An allegation

---

1. 346 Pa. Super. 479, 499 A.2d 1101 (1985).

which merely avers that the alleged defamatory statement was published to a third person is defective. *Id.*

In *Raneri v. DePolo,* 65 Pa. Commw. 183, 186, 441 A.2d 1373, 1374 (1982), the first count of plaintiff's complaint merely stated that the alleged defamatory material was published "to third persons." The appellate court sustained defendant's demurrer because plaintiff failed to state a cause of action in his complaint. *Id.* The court noted that appellant's defamation allegation failed to specify an identified third person to whom respondents published libelous material (citing *Gross v. United Engineers and Constructors Inc.,* 224 Pa. Super. 233, 235, 302 A.2d 370, 371 (1973)). It is axiomatic that, since the plaintiff's reputation that is protected is the esteem in which others hold him, publication to an identified third person is an essential element of actionable defamation. *Id.*

Furthermore, a cause of action in libel is not adequately pleaded by merely alleging, without any supporting facts or exhibits, that a publication is scandalous, malicious, defamatory and libelous. *Baird v. Dun & Bradstreet,* 446 Pa. 266, 272, 285 A.2d 166, 170 (1971). In *Baird,* our Supreme Court found that materials which allegedly have defamatory meaning, but lack proof of publication, must be excluded from consideration of whether these words were defamatory. *Id.*

In her complaint, plaintiff makes no mention of who the information was published to, nor does she state specifically how it was published. Thus, in addition to any communication by ACP being privileged, it also fails to specifically state how and by whom it was published.

*Amendment of Complaint*

Lastly, appellant contends that she was not allowed to amend her complaint after it was dismissed. However, appellate courts have denied requests for leave to amend a complaint where the appellant failed to seek leave to amend from the court below at any time during litigation. *Raneri, supra* at 188, 441 A.2d at 1376. In *Raneri,* the court stated that, since this issue of leave to amend was not raised below, it will not be considered on appeal. See also, *Di Santi v. Russ Financial Co.,* 251 Pa. Super. 184, 380 A.2d 439 (1977). Appellant never attempted to obtain leave of court prior to filing her notice of appeal from the court's granting of summary judgment; thus, under *Raneri,* her right to amend by leave of court is lost.

## IV. CONCLUSION

In consideration of the analysis set forth above, this court believes that the defendant's motion for summary judgment was properly granted and respectfully requests that its decision be affirmed by the court above.